IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HAOYANG YU, *et al.* | No.  19-cr-10195-WGY |

**DEFENDANTS HAOYANG YU AND TRICON MMIC, LLC'S SUBMISSION
IN ADVANCE OF DECEMBER 16, 2021 PRETRIAL CONFERENCE**

Defendants Haoyang Yu and Tricon MMIC, LLC respectfully make this submission in advance of the December 16, 2021 Pretrial Conference, to identify certain pending issues for consideration by the Court and to respond, in part, to the prosecution's trial brief, filed yesterday. D.E. #160.

**Introduction**

Mr. Yu and Tricon have pleaded not guilty to the Second Superseding Indictment. D.E. #137. They are presumed innocent and dispute the prosecution's tendentious characterization of the evidence. At most, this case could and should have been handled as a civil dispute between Mr. Yu and his former employer, Analog Devices, Inc. ("ADI"), a billion-dollar, multi-national semiconductor company, concerning Mr. Yu's alleged misuse of ADI's corporate data and his creation of Tricon, a home-based, start-up business, one that produced small quantities of monolithic microwave integrated circuits (MMICs), commodity electronic parts based on 1980s technology. But, instead, driven by the DOJ's racist "China Initiative" and investigators' apparent self-serving desire to justify the boundless resources expended chasing phantom suspicions of Chinese espionage, the prosecution has conjured overwrought criminal charges against Mr. Yu, his company, and his wife, co-defendant Yanzhi Chen, that neither its overblown rhetoric

1

regarding national security nor its needlessly complex proposed trial presentation can sustain.

**I.     Motions**

A number of motions, including dispositive motions and evidentiary motions, are currently pending. These include:

1. Defendants' Motion to Dismiss Indictment Due to Unconstitutional Selective Enforcement and Prosecution, D.E. #55-56; D.E. #89 (taken under advisement);

2. Defendant's Renewed Motion for *Franks* Hearing, D.E. #106 (filed and opposed);

3. Defendants' Motion Dismiss Counts 15 and 16 [*i.e.*, export charges], D.E. #150-51 (filed but not yet opposed);

4. Defendants' Motion for Relief from Misjoinder of Counts or, Alternatively, Severance, D.E. #125-26; D.E. #129 (denied without prejudice to further consideration as case management matter); and

5. Defendants' Motions in Limine to Exclude Anticipated Prosecution Evidence (filed but not yet opposed), specifically:

    a. Communications or Other Interactions with Aselsan, D.E. #154;

    b. Legal Matters Concerning Export Controls, D.E. #155;

    c. *Ex Post Facto* License "Determinations" by BIS, D.E. #156;

    d. "Materiality" of Statements in Naturalization Proceedings, D.E. #157;

    e. Testimony by Robert Broughton, D.E. #158.

Additional defense motions in limine are likely to be filed as the prosecution continues to make pretrial disclosures of its anticipated trial presentation.

In its trial brief, D.E. #160, the prosecution indicated that it will offer expert testimony, but with one exception (Christopher Nordquist, of Sandia National Laboratories), the prosecution has failed to comply with its pre-trial disclosure obligations: providing a meaningful summary of the witness's testimony (as opposed to a bare list of topics) and stating the "basis and reasons" for his or her conclusions. *See* Fed. R. Crim. P. 16(a)(1)(G). Nor has the prosecution satisfied its burden, as the party offering expert evidence, to establish that the methods used and conclusions reached

by its experts are scientifically reliable. *See* Fed. R. Evid. 702, 703.

The prosecution also states that it will object to certain evidence, if offered by Mr. Yu or Tricon at trial, but the prosecution has not filed any motions in limine or provided any legal support. Based on its trial brief, the prosecution's arguments appear to lack merit. For example, evidence of bias – ethnic or otherwise – on the part of investigators and other witnesses is always relevant to credibility, which the jury must assess. Evidence about "reverse engineering" is relevant to the trade secret charges because it tends to rebut two elements: that ADI's MMICs do not constitute or contain "trade secrets" and that Mr. Yu did not obtain any of ADI's technology through "improper means." Evidence that BIS itself misclassified one of Tricon's MMICs (first determining it was "controlled" but later deciding no license was required) is similarly relevant because it demonstrates that export controls are complex and vague and, thus, tends to rebut the *mens rea* element: that Mr. Yu or Tricon *willfully* violated any applicable export regulations. Evidence that ADI did not pursue civil remedies against Mr. Yu tends to undermine the prosecution's assertion that the allegedly "stolen" information was particularly valuable to ADI or that it suffered significant financial losses.

Finally, the prosecution states that it will not seek to admit "other bad acts" evidence pursuant to Fed. R. Evid. 404(b) but "will seek agreement that matters such as evidence of theft and loss beyond the four corners of the SSI and the defendant's use of pseudonyms are directly relevant to loss, motive, and consciousness of guilt." To date, the prosecution has not yet requested any such "agreements" with the defense. And, for example, Mr. Yu's use of an Americanized "nickname" in business interactions ("Jack Yu") is a commonplace, not probative of anything relevant to the pending charges. Indeed, the suggestion that this practice was deceptive is itself disingenuous.

## II. Insufficient Pretrial Disclosures

The trial brief identifies numerous "categories" of witnesses and exhibits, suggesting that the prosecution anticipates a lengthy and complex trial presentation that it may have difficulty completing in 2-3 weeks, even if the Court intends to sit for full days. Notably, the prosecution has not yet provided an actual witness list, exhibit list, proposed exhibits, or *Jencks* material, even though trial is scheduled to begin in just over a month.

In addition, as noted above, the prosecution has failed to make adequate pretrial disclosures concerning several witnesses who will be called to provide expert testimony. These include:

1. ADI employee (Robert Broughton, about ADI's alleged "trade secrets" and his technical comparisons of ADI's MMICs and files with Tricon's);

2. BIS official (Carlos Monroy, about the meaning of the EAR and its application to Tricon's MMICs and/or GDS files);

3. CIS official (Mirella Tiberi, the "materiality" of alleged false statement during naturalization proceedings);

4. Former DOD official (Robert Outzen, the connection between Aselsan, which the prosecution contends was a customer of Tricon, and the Turkish military); and

5. Computer forensic analysts (Christopher Beckstrom (FBI) and Stephen LaForest (DOC) concerning analysis of seized electronic devices and online accounts).

The first four are already the subjects of motions in limine, noted above. The defense is engaged in ongoing discussions with the prosecution about the computer forensic evidence and evaluating whether a motion may also be necessary concerning that proposed testimony.

Finally, in its trial brief, the prosecution states that at trial, it plans to use various "summaries," as exhibits under Fed. R. Evid. 1006 or chalks under Fed. R. Evid. 611. To date, however, the prosecution has not identified the proposed "summaries" or the specific evidence on which they are purportedly based, both of which are required by the evidentiary rules and also necessary for the defense to evaluate and, if necessary, challenge the proffered summaries.

### III. Sentencing Issues

To the extent that the prosecution intends to offer evidence that is relevant only to sentencing issues (*e.g.*, evidence concerning alleged losses to ADI and Mr. Yu's "statements about future plans for the enterprise," *see* U.S.S.G. § 2B1.1(b)(1), and evidence concerning alleged interactions with Aselsan in Turkey, *see* U.S.S.G. § 2B1.1(b)(14)), this Court should bifurcate the trial to avoid unfair prejudice, so that the jury first decides whether Mr. Yu or Tricon is guilty of any charged offense and, only then, whether the prosecution has proven facts that might warrant application of any arguably applicable enhancements.

Moreover, the defense expects to challenge the prosecution's proffered theories of relevance concerning these enhancements. For example, ADI's purported costs to develop MMICs are marginally relevant, at best, where Mr. Yu did not deprive ADI of those products; rather, the appropriate measure of "loss" would be sales, if any, of those products by Tricon that otherwise would have gone to ADI. And evidence on these topics would surely involve contested expert testimony based on non-public corporate data, which government has not disclosed. Separately, the fact that a Turkish government entity may have purchased a Tricon MMIC allegedly produced with ADI trade secrets does not establish that Mr. Yu transmitted the trade secret, itself, to benefit the foreign government. The customer allegedly obtained an end-product from Tricon, not a trade secret, and it could have bought a functionally identical product directly from ADI itself or myriad third party resellers; the only unique "benefit," economic or otherwise, was allegedly conferred upon Mr. Yu and Tricon.

### IV. Other Matters

The defense team would like to discuss trial logistics, including whether the Court anticipates sitting for full or half days, as well as courtroom configuration and jury selection procedures in light of the COVID-19 pandemic. In addition, the defense would propose that the

Court employ a written juror questionnaire to facilitate voir dire on sensitive issues including possible racial or ethnic bias as well juror concerns about service during the pandemic.

Finally, while the defense is prepared to proceed with trial, recent pandemic trends, including rapidly rising case numbers and test positivity rate in Massachusetts, even among the vaccinated, are a cause for grave concern. Given the anticipated length and complexity of this trial and the number of anticipated witnesses, some from out-of-state, a possible mistrial due to COVID infection of a party, counsel, witness, juror, or court staff member would be extremely disruptive and costly. As the Court may be aware, in *United States v. Andrade*, No. 18-cr-10364-DPW, a government witness recently tested positive, prompting to the court to suspend ongoing jury selection and postpone the trial to March. We would like to discuss with the Court what further public health developments or thresholds, prior to commencement of trial, may yet dictate a continuance as a prudential matter. In addition, we note that severing the case, as Mr. Yu had proposed, would not only avoid the prejudicial effects of joinder he identified but also reduce the risk of COVID mistrial by condensing and simplifying the trial presentation.

Respectfully submitted,

**HAOYANG YU and**
**TRICON MMIC, LLC**

by their attorneys,

　　　　*/s/ William W. Fick*　　　　
William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
Amy Barsky (BBO #601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
*wfick@fickmarx.com*
*dmarx@fickmarx.com*
*abarsky@fickmarx.com*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 16, 2021.

*/s/ William W. Fick*