UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Case No. 1:19-cr-10195-WGY |
| HAOYANG YU *et al.* | ) ) ) | |
| Defendants. | ) ) | |

## GOVERNMENT'S OMNIBUS MOTION *IN LIMINE*

The government moves *in limine* to exclude irrelevant and unduly prejudicial evidence from the trial that, if introduced, is likely to confuse the issues, waste time, and invite jury nullification.

The defendant is charged with defrauding his former employer, Analog Devices Incorporated ("ADI"), of its intellectual property and trade secrets, and then using that property to start his own microchip design firm called Tricon MMIC ("Tricon"). The investigation of this case began when two separate industry sources reported Tricon to law enforcement authorities because they thought it was suspicious. *See* ECF No. 68, Exhibits 1-3. In one of these reports, the industry source (referring to Tricon's website) described how it was "not possible" for Tricon to have developed its robust MMIC product line so quickly.[1] *Id.* at Ex. 1. Still, these facts have not stopped the defense from attempting—unsuccessfully—to portray this case as motivated by bias and racism. *See, e.g,* ECF Nos. 55 and 56 (defendant's Motion to Dismiss for Selective Enforcement and Prosecution). As this Court has already suggested, these baseless claims have

---

[1] MMIC stands for "monolithic microwave integrated circuit." MMICs are a type of microchip designed and sold by ADI. During the time that he worked at ADI, the defendant was a senior design engineer of MMICs.

no place in front of the jury. The government, therefore, seeks to preclude the defendant from pursuing a defense—through argument, questioning of witnesses, or otherwise—based on supposed selective prosecution and ethnic bias. Such a defense would include, among other things, reference to the Department of Justice's former "China Initiative." This case has nothing to do with the China Initiative and, in fact, began long *before* the China Initiative was ever even announced, much less implemented.

The government also asks the Court to preclude the defense from raising the following *additional* issues during the trial: (1) the availability of potential civil remedies to address the defendant's theft of intellectual property and trade secrets; and (2) Department of Commerce license determinations made by non-testifying witnesses related to products and technology that are *not* at issue in the case. As explained more fully below, allowing the defense to raise these issues would only confuse the issues, waste time, and further invite jury nullification.

## Background

The defendant is charged in a twenty-one-count indictment with wire fraud, possession of stolen trade secrets, illegal exports, and immigration fraud. The wire fraud and trade secrets offenses stem from the defendant's former employment at ADI. He is alleged to have stolen thousands of confidential computer files—many of which contained trade secrets—from ADI during the time that he worked there and then, while he was still employed at ADI, to have used those stolen files to start Tricon. Indictment ¶ 12. The investigation of Yu and Tricon began in approximately January 2018 after two separate industry sources reported Tricon's suspicious activities to law enforcement. *See* ECF No. 68, pp. 1-4 and Exhibits 1-3. ADI remained unaware of the investigation and Yu's theft until the government contacted the company in about April

2018.  More than six months later, on November 1, 2018, then Attorney General Jeff Sessions announced the beginning of the Department of Justice's China Initiative.[2]

A grand jury returned an indictment against the defendant and Tricon on June 11, 2019. Among other things, that indictment charged the defendant with illegally exporting technology associated with a particular Tricon microchip—the TM5054—to Taiwan without an export license from the Department of Commerce ("DOC").  *See* ECF No. 1, ¶¶ 19-20.  Those illegal export charges were based on a determination from a DOC licensing official that the TM5054 was controlled for export for national security and other reasons.  Later, DOC reversed is determination and found that the TM5054 was *not* controlled and, therefore, did *not* require a license to be exported to Taiwan.  The government dismissed these export charges accordingly.  In their place, the government charged illegal exports of technology related to two *different* Tricon products, the TM5051 and the TM5052.  Indictment ¶¶ 26-31, 40.  These charges are based, in part, on a determination by a *different* DOC licensing official that the TM5051 and TM5052 are controlled for national security reasons.  This determination is consistent with Tricon's own website, which advertised the TM5051 and TM5052 as export controlled.  *Id.* ¶ 30.

## Legal Standard

It is axiomatic that only relevant evidence is admissible at trial.  Fed. R. Evid. 402.  And evidence is relevant only if it tends to make a fact of consequence more or less probable. Fed. R. Evid. 401.  Even when evidence is relevant, however, it may still be excluded if its probative value

---

[2]*See* https://www.justice.gov/opa/speech/attorney-general-jeff-sessions-announces-new-initiative-combat-chinese-economic-espionage.  The initiative, disbanded earlier this year, sought to counter national security threats from the Chinese government and specifically targeted hacking, economic espionage, threats to critical infrastructure, and attempts to influence the American public with the requisite disclosures.  *See* https://www.justice.gov/opa/speech/assistant-attorney-general-matthew-olsen-delivers-remarks-counter-ing-nation-state-threats.

is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time.  Fed. R. Evid. 403

Questions of relevance and unfair prejudice under the Rules of Evidence often overlap with the issue of jury nullification.  Although jurors possess the raw power to set an accused free for any reason or for no reason, their duty is to apply the law as given to them by the court.  *See United States v. Boardman*, 419 F.2d 110, 116 (1st Cir.1969), cert. denied, 397 U.S. 991 (1970).  It is well-settled, therefore, that "neither the court nor counsel should encourage jurors to exercise this power [to nullify]."  *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993); *see also United States v. Lucero*, 895 F. Supp. 1421, 1426 (D. Kan. 1995) ("Defendants are not entitled to present evidence which is irrelevant for any purpose other than to provoke the finder of fact to disregard the law."); *United States v. Warwick*, 2017 WL 5027295, at *2 (D.N.M. Oct. 30, 2017) ("[B]ecause Defendant's belief regarding the law is irrelevant and because it would be introduced for the improper purpose of assisting jury nullification, it should be excluded under Federal Rule of Evidence 403 because its (non-existent) probative value is substantially outweighed by its unfair prejudicial value, it would be likely to confuse the issues, and it would be likely to mislead the jury.").  "A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification." *Sepulveda*, 15 F.3d at 1190.

## Motions *in Limine*

**I.   Baseless Claims of Selective Prosecution and Ethnic Bias Are Irrelevant, Unduly Prejudicial, and Amount to An Improper Attempt at Jury Nullification.**

Earlier in the case, the defendant moved to dismiss the indictment by claiming he was "selectively targeted" by the FBI and the DOJ because he is a Chinese American.  ECF No. 56 (Mot. to Dismiss) at 1-2.  In support of this baseless claim, among other things, the defendant pointed to the DOJ's China Initiative – ignoring the fact that this investigation predates the China

Initiative by more than ten months. *Id.* at 10. The government opposed the defendant's motion on multiple grounds, noting the true origins of the investigation (industry sources that predate the China Initiative), correcting the defendant's misleading use of law review articles and other sources, and pointing out the lack of any evidence of discriminatory intent in this case. ECF No. 68 (Gov't Opposition). The Court reserved ruling on the defendant's motion until after the trial, but also invited supplemental briefing. The government submitted such briefing and argued that "trial is not the appropriate venue to air whether the government engaged in discrimination." ECF No. 94 at 20.

Even while the Court's decision is still pending, claims of selective prosecution or ethnic bias—including, but not limited to, overt references to the China Initiative—have no place before the jury. "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Because it is "a matter that is independent of the defendant's guilt or innocence," claims of selective prosecution and ethnic bias are "not … matter[s] for the jury." *United States v. Abboud*, 438 F.3d 554, 579-80 (6th Cir. 2006); *see also United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir.1983) (finding that the "issue of selective prosecution is one to be determined by the court"). Just as they should not be allowed to argue these claims directly to the jury, the defense must also be precluded from pursuing claims of selective prosecution and ethnic bias through cross examination of the government's witnesses. *See United States v. Bryant*, 5 F.3d 474, 476 (6th Cir. 1993) (affirming trial court's decision to prohibit cross-examination regarding racial bias). Such an attempt to backdoor their unfounded selective prosecution and ethnic bias claims—a transparent attempt at jury nullification—would go far beyond what is permitted by the Sixth Amendment. *Id.*

**II.     The Availability of Civil Remedies is Irrelevant.**

For this same reason, the defense must not be permitted to argue or otherwise discuss in front of the jury potential civil remedies available to the victim company, ADI. In their motion to dismiss for selective prosecution, the defense claims—without any basis—that the defendant would have received a "stern letter from ADI's outside counsel" threatening a civil suit but for his Chinese ethnicity. ECF No. 56 at 2. They went on to discuss how several individuals previously accused of stealing ADI's intellectual property were sued by ADI, but not prosecuted criminally. *Id.* at 4 (describing the "ADI-MACOM litigation"). It seems likely, therefore, that the defense will argue to the jury that this case is better dealt with as a civil matter (not a criminal one), perhaps even going so far as to cross examine witnesses from ADI about the ADI-MACOM litigation. Clearly this would be improper. The fact that civil remedies are available to ADI, or that ADI has pursued civil remedies, says absolutely nothing about the defendant's innocence or guilt in this case. Furthermore, even if these things were relevant, evidence about them would still be inadmissible due to the overwhelming likelihood of unfair prejudice, juror confusion, and wasted time. Accordingly, the Court should exclude this evidence under Federal Rules of Evidence 401, 402, and 403.

**III.    Unrelated License Determinations by Non-Testifying DOC Witnesses are Irrelevant and Confusing**

The defendant is charged in Counts Eighteen and Nineteen of the indictment with making illegal exports of controlled technology related to two Tricon MMICs, the TM5051 and TM5052, to Taiwan in violation of International Emergency Economic Powers Act and its corresponding regulations, the Export Administration Regulations ("EAR"). The EAR is administered by the U.S. Department of Commerce ("DOC"). At trial, the government intends to call a DOC senior official, Carlos Monroy, to explain to the jury his understanding of how to determine whether an

6

item or technology is subject to the EAR; how to determine the classification of an item or technology under the EAR; and, lastly, how to determine (based upon the classification and other factors) whether a license is required to export that item or technology to a particular destination. Mr. Monroy will then explain how one would undertake this analysis to determine whether the particular technology at issue in this case—GDS files for the TM5051 and TM5052—constitute technology requiring a license for export to Taiwan.

The government expects the defense to attempt to confuse the jury about the EAR classification process by pointing to DOC's conflicting classifications of Tricon's TM5054. But of course, none of the charges in this case have anything to do with the TM5054. What's more, the DOC officials who authored the TM5054 classifications will not be testifying during the trial. It would hardly be appropriate, therefore, for the defense to cross examine Mr. Monroy about classifications that he did not make and of which he has no knowledge. Furthermore, the government expects Mr. Monroy will testify that classifications under the EAR are idiosyncratic because they depend, in large part, on the performance specifications of the specific item in question. Because the classification process is so fact specific—and because the TM5054 is a separate technology—there is little utility in comparing DOC's past classifications of the TM5054 with Mr. Monroy's classification of the TM5051 and TM5052. The jury's focus must be on whether technology related to the TM5051 and TM5052 was controlled and, therefore, required a license for export to Taiwan. Evidence concerning DOC classifications made by non-testifying witnesses based on information to which Mr. Monroy is not privy will only distract the jury and must be excluded under Federal Rule of Evidence 401, 402, and 403.

**Conclusion**

For the reasons set forth above, the government respectfully asks the Court to preclude the defense from: (1) making claims of ethnic bias and selective prosecution to the jury (including by referencing the DOJ's former China Initiative); (2) making claims about the availability or appropriateness of civil remedies to address the defendant's conduct (including by questioning witnesses about the ADI-MACOM civil litigation); and (3) referring to DOC's export classifications of the TM5054, a microchip no longer charged int his case.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By: */s/ Jason A. Casey*
Amanda Beck
John A. Capin
Jason A. Casey
Assistant United States Attorneys

Date: April 15, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

*/s/ Jason A. Casey*
Jason A. Casey
Assistant United States Attorney