IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HAOYANG YU, *et al.* | No.  19-cr-10195-WGY |

**DEFENDANTS' MOTION TO RECONSIDER ORDER [D.E. 216] GRANTING GOVERNMENT'S MOTION IN LIMINE TO AUTHENTICATE RECORDS FROM GOOGLE AND ADMIT GOOGLE CERTIFICATE OF AUTHENTICITY [D.E. 213]**

Defendants, Haoyang Yu and Tricon MMIC, LLC, respectfully request that the Court reconsider its Order [D.E. 216] granting the government's Motion in Limine to Authenticate Records from Google and Admit Google Certificate of Authenticity [D.E. 213].

The government filed its motion on Saturday, April 30, 2022. When the Court issued its Order on Monday, May 2, Defendants had not yet filed their response. For the reasons set forth below, Defendants submit that the particular records at issue are not properly subject to Fed. R. Evid. 902(11) and (13) certifications. Separately, admitting the Google "certification" ("affidavit"), without live testimony from the affiant, would violate the Confrontation Clause. According, the Court should deny the government's motion and require a custodian to appear at trial and testify, subject to cross-examination, in order to admit the records.

**I.    The Google Records at Issue Are Not Properly Subject to Rule 902 Certifications.**

The government seeks to admit two categories of records from Google:  i) the "contents of defendant Yu's Google Drive Account," that is, computer files that Mr. Yu allegedly created and/or "stored" on Google; and ii) certain "metadata" maintained by Google about each of those computer files.  These records do not qualify as "business records" under Fed. R. Evid. 803(6) that are self-authenticating under Fed. R. Evid. 902(11), nor are they self-authenticating records

1

"generated by an electronic process or system" under Fed. R. Evid. 902(13). *See United States v. Weber*, 2021 U.S. Dist. LEXIS 233139 (D. Mont. Dec. 6, 2021) (denying government motion in limine to admit records from Charter Communications, Google, Facebook, and Dropbox as "self-authenticating") (copy attached as Exhibit A).

> First . . . a record is not "kept in the course of a regularly conducted activity of a business," as required for application of Rule 803(6), unless it is "made pursuant to established company procedures for the systematic or routine and timely making and preserving of company records." The record must also be "relied upon by the business in the performance of its functions."
> . . . .
> To the extent the United States argues that the substantive content of the Charter, Google, Facebook, and Dropbox accounts at issue in this case are business records, the Court disagrees. Nothing in the record establishes that Charter, Google, Facebook, and Dropbox "verify[s] or rel[ies] on the substantive content" of the accounts at issue in the course of its business. The substantive content of the accounts at issue, such as messages, images, videos, were not made, nor relied on, by the providers for the purpose of conducting their respective businesses. As such, the . . . the substantive content of the records at issue are not self-authenticating business records under Rule 902(11).

*Id.* at *7-*8 (internal citations omitted).

Second, reliance on Fed. R. Evid. 902(13) is "similarly unavailing."

> Rule 902(13), by its very terms, applies only to records created via an electronic process. It does not render self-authenticating substantive content created, shared, or stored, by a user of a social media account. Wright and Miller § 7147 ("It is important to note that" Rule 902(13) "does not include records created by a human that are stored in an electronic format"). Such content arises not from an automatic electronic process but from the actions of the user of the account. This is not the sort of evidence generated by electronic process that falls within the scope of Rule 902(13).

*Id*. at *9 (case citation omitted).

Accordingly, "[b]ecause the Google evidence at issue certainly encompasses the substantive content of [the account] not generated by electronic processes, the Court cannot hold

2

that it is self-authenticating under Rule 902(13)." *Id*. at *10. To hold otherwise, as the prosecution proposes, would mean that every email, text message, or other file stored in the cloud, would be automatically admissible as a self-authenticating business record.

## II.    Admission of the Google Certification Would Violate the Confrontation Clause.

The prosecution's argument that admission the Google affidavit would not violate the Confrontation Clause misreads controlling Supreme Court precedent even as it tacitly acknowledges that there is no controlling authority in the First Circuit.

The Confrontation Clause of the Sixth Amendment requires that a defendant be given an opportunity to test the evidence against him in a "particular manner . . . in the crucible of cross-examination." *Crawford v. Washington,* 541 U.S. 36, 61 (2004).  It forbids, in particular, precisely what the government proposes here: a trial where important evidence is offered against the defendant by an affidavit of a witness whom the defendant has no ability to cross-examine, resulting in the admission of digital evidence that is not self-explanatory, without context.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  Beginning with *Crawford v. Washington*, th Supreme Court has repeatedly held that the Confrontation Clause strictly prohibits the admission of *ex parte* affidavits and other testimonial statements of witnesses who are absent from trial, unless the defendant had a prior opportunity to cross-examine the witnesses.  The Court held that the Sixth Amendment right of an accused to confront "witnesses against him," applies to all witnesses who "bear testimony."  541 U.S. at 51.  If an out-of-court statement is "testimonial," the Confrontation Clause prohibits its use at trial against a defendant unless the witness is unavailable *and* the defendant had a prior opportunity for cross-examination.  *Id.* at 59. *Crawford* identified the "core class" of testimonial statements as:

> [1] ex parte in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; [2] extra-judicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and [3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51-52 (citations omitted).

In *Melendez- Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009), the Supreme Court held—in what it described as a "rather straightforward application of our decision in *Crawford*"—that a certificate prepared by a forensic analyst identifying material seized by the police as cocaine was "incontrovertibly a 'solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Id*. at 2352–53 (quoting *Crawford*, 541 U.S. at 51). The certificate was therefore "testimonial," and its admission violated the Confrontation Clause. *Id*.

In *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), the Supreme Court considered a Confrontation Clause challenge to the admission, as a "business record," of a certificate setting forth a defendant's blood alcohol concentration, supported by the in-court testimony of a laboratory employee "who was familiar with the laboratory's testing procedures, but had neither participated in nor observed the test on Bullcoming's blood sample." *Id*. at 2709. The analyst's certificate described his conclusion and a number of other evidentiary facts: for example, "that [t]he seal of th[e] sample was received intact and broken in the laboratory, [and] that 'the statements in [the analysis's block of the report] are correct.'" *Id.* at 2710. The Court held that the analyst's certificate was "testimonial" and reversed the defendant's conviction because the analyst was not available for cross-examination. *Id*. at 2719. The Court reasoned: "when the State elected to introduce [the analyst's] certification, [the analyst] became a witness [the defendant] had a right to confront. Our precedent cannot sensibly be read any other way." *Id*. at 2716.

As in *Melendez-Diaz*, 129 S. Ct. at 2533, the prospective admission of the Google affidavit and accompanying business records presents a "rather straightforward application of [the] decision in *Crawford*." The Google affidavit, like the certificates at issue in *Melendez-Diaz* and *Bullcoming,* is plainly testimonial; indeed, it falls clearly within *Crawford's* description of "core class" testimonial statements. The document is both an "affidavit" *and* a "statement[ ] that [was] made under circumstances which would lead an objective witness reasonably to believe that the statement[ ] would be available for use at a later trial." *Melendez-Diaz*, 129 S. Ct. at 2532 (quoting *Crawford,* 541 U.S. at 51-52). The "primary purpose" of the affidavit, "viewed objectively, was . . . to create evidence for use at trial." *Williams v. Illinois*, 132 S. Ct. 2221, 2243 (2012) (plurality opinion concluding that Cellmark DNA report was not testimonial because the state's "primary purpose was to catch a dangerous rapist who was still at large, not to obtain evidence for use against" the defendant).

Moreover, the Google affidavit was a "solemn declaration or affirmation made for the purpose of establishing or proving some fact – [a substitute for] the precise testimony the [custodian] would be expected to provide if called at trial." *Melendez- Diaz*, 127 S. Ct at 2532 (quoting *Crawford,* 541 U.S. at 51-52). The affidavit is "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" *Melendez-Diaz*, 129 S. Ct. at 2532 (quoting *Davis v. Washington,* 547 U. S. 813, 830 (2006)). The prosecution seeks to use the affidavit to establish the facts essential to make the Google records admissible under Rules 902(11) and (13)

Because the Google affidavit is testimonial, the Google custodian becomes "a witness [the defendant] had a right to confront." *Bullcoming,* 131 S. Ct. at 2716. Supreme Court "precedent cannot sensibly be read any other way." *Id.*

The prosecution contends the admission of the Google affidavit at issue does not offend the Confrontation Clause because the affidavit serves only as the foundation for the admission of substantive evidence. That assertion misses the crucial distinction—recognized in *Crawford, Melendez-Diaz*, and *Bullcoming*—between the improper use of *ex parte* testimonial affidavits to prove the evidentiary facts necessary to admit the documents at issue, and the use of business records at trial—a practice permissible so long as the prosecution calls a live witness to prove the facts necessary for their admission.

*Crawford* acknowledged the business records exception to the hearsay rule was long recognized by the common law and held the framers did not intend to revoke common law exceptions to the hearsay rule when they adopted the Confrontation Clause. 541 U.S. at 53 (the "'right to be confronted with the witnesses against him' . . . is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time for the founding"). The Supreme Court has never suggested, however, that prosecutors do not need to call live witnesses to prove the facts necessary to admit documents as business records. *Melendez-Diaz* and *Bullcoming* demonstrate that such a claim cannot be squared with the Confrontation Clause.

In *Melendez-Diaz*, the prosecution invoked the common-law business records exception to argue that the drug certificates there at issue there should be admitted without live testimony, purportedly because they were "akin to the types of official and business records admissible at common law." 129 S. Ct. at 2538. The Supreme Court rejected that argument, concluding: "Whether or not they qualify as business or official records, the analysts' statements here—prepared specifically for use at petitioner's trial—were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment." *Id*. at 2540; *see also*

6

*Bullcoming*, 131 S. Ct. at 2712 (rejecting claim that certificate was admissible because state characterized it as a "business record").

*Melendez-Diaz* also demonstrates that, without live testimony of a witness subject to cross-examination, the documents attached to the custodian affidavits should be excluded. The Court noted that, at common law:

> only a single class of evidence . . . though prepared for use at trial, was traditionally admissible: a clerk's certificate authenticating an official record – or a copy thereof – for use as evidence. But a clerk's authority in that regard was narrowly circumscribed. He was permitted to 'certify to the correctness of a copy of a record kept in his office' *but had 'no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or certify to its substance or effect.'*

*Id.* at 2538-39 (emphasis supplied). Here, the Google affidavit does far more than "authenticate" records as genuine copies of originals in the custodian's possession. The affidavit provides critical testimony establishing the facts necessary to make the records admissible under Fed. R. Evid. 902(11) and (13).

The admission of business records through the live testimony of a custodial witness is firmly grounded in history; indeed, it was "well established by 1791." *Crawford*, 541 U. S. at 55-56. The business records exception allows a party to call a custodian to establish that a document is a business record, thus obviating the need to call multiple employees who may have handled some aspect of a business transaction. But the use of affidavits as substitutes for live custodial testimony is a recent phenomenon with no historical roots. The Federal Rules of Evidence did not permit the use of an affidavit to lay the necessary foundation for the admission of business records until 2000, *see* Advisory Committee Notes, *Fed. R. Evid.* 803(6) (2000 Amendments) (noting that, prior to the 2000 amendment, "courts have generally required foundation witnesses to testify"). For more than 200 years, courts insisted on live testimony from witnesses to establish the facts

7

necessary for the admission of business records. The recent experiment in the use of affidavits is entitled to no historical deference.

Respectfully submitted,

**HAOYANG YU and**
**TRICON MMIC LLC**

by their attorneys,

    */s/ William Fick*
William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
Amy Barsky (BBO #601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
*wfick@fickmarx.com*
*dmarx@fickmarx.com*
*abarsky@fickmarx.com*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 3, 2022.

    */s/ William W. Fick*