IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

HAOYANG YU

No.  19-cr-10195-WGY

**DEFENDANT HAOYANG YU'S REPLY
TO THE PROSECUTION'S OPPPOSITION TO HIS MOTION
FOR JUDGMENT OF ACQUITTAL OR, ALTERNATIVELY, FOR A NEW TRIAL**

Defendant, Haoyang Yu, respectfully submits this Reply to the prosecution's Opposition [D.E. 304] to his renewed Motion for Judgment of Acquittal or, Alternatively, for a New Trial [D.E. 286] and its Response [D.E. 305] to his Supplemental Memorandum [D.E. 303].

The prosecution devotes nearly 8 pages of its Opposition to a jaundiced "summary" of the evidence, apparently oblivious to the fact that the jury acquitted Mr. Yu on 18 of the 19 charges before it. While this Court must still view the evidence in the light most favorable to the verdict *on Count One*, it must hold the prosecution to its burden of proof beyond a reasonable doubt and cannot ignore the reality that the jury rejected nearly all of the prosecution's case.

**I.      Insufficient Evidence Requires Acquittal**

The trial evidence was insufficient to convict Mr. Yu for multiple, independent reasons.

**A.      Mr. Yu never possessed the "trade secret" alleged in Count One.**

The prosecution concedes that Mr. Yu never possessed "the design layout and GDS file for the HMC1022A microchip"—the singular, specific "thing" that the indictment alleged to be a "trade secret" and the defining element of the offense charged in Count One. The prosecution's contention that this failure of proof is inconsequential, Opp. at 9-14, misunderstands the distinction between a constructive amendment and a variance.

1

Here, the grand jury found probable cause that Mr. Yu unlawfully possessed "the design layout and GDS file for the HMC1022A microchip." It never determined whether any *other*, *additional* materials, such as a design layout and GDS file for an abandoned HMC1022A prototype, *also* contained or comprised trade secrets, and whether there was probable cause that Mr. Yu unlawfully possessed that *different* item or any *broader category* of items encompassing both "the HMC1022A microchip" itself and earlier prototypes. Even if the Court finds the prosecution may have proven some crime, it plainly did not prove the crime charged in the indictment returned by the grand jury. Accordingly, a judgment of acquittal must enter.

As the First Circuit has recognized, the Supreme Court set the boundaries constraining constructive modification of an indictment in two seminal cases:  *Stirone v. United States*, 361 U.S. 212 (1960), and *United States v. Miller*, 471 U.S. 130 (1985). *See United States v. Mubayyid*, 658 F.3d 35, 49-550 (1st Cir. 2011) (discussing *Miller* and *Stirone*).

*Stirone* established that the Constitution does not "permit a defendant to be tried on charges that are not made in the indictment against him." *Miller*, 471 U.S. at 143. Therefore, "'after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself.'" *Id*. (quoting *Stirone*, 361 U.S. at 215-16). In *Stirone*, the indictment charged use of extortion and threats to interfere with interstate deliveries of *sand*, in violation of the Hobbs Act. *See id*. at 213-14. At trial, however, the prosecution's presentation also included evidence of interference with interstate *steel* shipments. The Supreme Court reversed the conviction.

> [I]t cannot be said with certainty that with a new basis for conviction added, Stirone was convicted solely on the charge made in the indictment the grand jury returned. Although the trial court did not permit a formal amendment of the indictment, the effect of what it did was the same. And the addition charging interference with steel exports here is neither trivial, useless, nor innocuous. While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a

grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error. The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge. Thus the basic protection the grand jury was designed to afford is defeated by a device or method which subjects the defendant to prosecution for interference with interstate commerce which the grand jury did not charge.

*Id*. at 217-18.

*Miller*, in turn, defined the limits of this concept, holding that it was not a constructive amendment of the indictment when a defendant was convicted of conspiracy based on proof of a criminal plan *narrower than, but fully included within*, the plan set forth in the indictment. *See* 471 U.S. at 137. Significantly, however, in reaching this result, the Supreme Court reaffirmed *Stirone*'s holding that a defendant cannot be tried on evidence "not fully contained in the indictment" and that it would be error to allow "trial evidence [to] 'amend[ ]' the indictment by *broadening* the possible bases for conviction from that which appeared in the indictment." *Id*. at 138 (emphasis in original).

The First Circuit cases the prosecution cites fall squarely within the ambit of *Miller,* where evidence that proves an offense *narrower than* or *encompassed within* the one charged does *not* constructively amend the indictment. *See, e.g., Mubayyid*, 658 F.3d at 54 (finding no constructive amendment due to "*narrowing* of the conspiracy that occurred in this case" and holding that a "single, unitary object" is not an "essential element" of a conspiracy offense) (emphasis added); *United States v. Dowdell*, 595 F.3d 50, 69 (1st Cir. 2010) (actual amendment of indictment changing "cocaine" to "cocaine base" permissible because "cocaine base is merely an isomer of cocaine . . . .The government could have proferred evidence of distribution of cocaine base and still carried its burden of proving distribution of 'cocaine.'"); *United States v. DeCicco*, 439 F.3d 36, 46 (1st Cir. 2006) (finding no constructive amendment where indictment charged two fraud

theories and trial evidence established one of them); *United States v. Fornia-Castillo*, 408 F.3d 52, 66 (1st Cir. 2005) (finding no constructive amendment where discrepancy about whether defendant was an owner or mere transporter of drugs is not a constructive amendment because "role" is not an element of conspiracy). Accordingly, the prosecution's use of quotations from these cases, extracted from context and applied to inapposite factual circumstances and different statutory charges, is not persuasive in this case, where the offense of conviction based on the evidence at trial was necessarily *broader* than the indicted charge.

The prosecution's argument that the specification of particular trade secrets in the indictment is "mere surplusage," Opp. at 11, cannot withstand scrutiny. Even assuming, for the sake of argument only, that the prosecution could properly have brought a generic charge of unlawfully possessing unspecified trade secrets,[1] that is not what it chose to do here. Instead, the indictment specified the particular "thing" that allegedly satisfied the essential "trade secret" element in each count. Having made that choice, the prosecution must now be held to the grand jury's findings, consistent with *Stirone*. There, the Supreme Court explained that "there are two

---

[1] If we assume, for the sake of argument, that possession of multiple stolen trade secrets were properly chargeable as a *single* generic offense, the indictment in this case would be unlawfully *multiplicitous* because it divided that single offense into multiple counts. *See United States v. Brandon*, 17 F.3d 409, 422 (1st Cir. 1994) ("An indictment is multiplicitous and in violation of the Fifth Amendment's Double Jeopardy Clause if it charges a single offense in more than one count."). By bringing the indictment in the form it did, with multiple counts, each charging possession on the same day of a distinct individual trade secret, the prosecution necessarily took and maintains the position that each possession of a *particular* trade secret is a *distinct* offense. Accordingly, an indictment that alleged possession of multiple trade secrets in a single generic count would have been impermissibly *duplicitous*. *See United States v. Craigue*, 565 F. Supp. 3d 267, 270 (D.N.H. 2021) ("A count is duplicitous if it alleges that the defendant committed 'two or more distinct offenses.'") (quoting *United States v. Prieto*, 812 F.3d 6, 11 (1st Cir. 2011)). Put another way, as structured, the indictment in this case could not have simply charged one generic count or omitted the distinct individual trade secret referenced in each separately charged count. The specified trade secret in each count is an essential element of each charged offense, not "mere surplusage."

essential elements of a Hobbs Act crime: interference with commerce, and extortion. Both elements have to be charged. Neither is surplusage and neither can be treated as surplusage." 361 U.S. at 218. "It follows that when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, *even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened*." *Id.* (emphasis added).

Numerous progeny of *Stirone* and *Miller* confirm the basic rule: where the prosecution elects to specify the particular fact or facts that satisfy an essential element of the charged offense in an indictment, the possibility that the jury convicted based on *other, different* facts requires reversal, even if those other facts could have satisfied the essential elements of a generically worded indictment.[2] In *Stirone*, proof that included interference with *steel* shipments required

---

[2] For over 40 years, every Circuit to address the issue in a published decision has applied the same reasoning. *See, e.g.*, *United States v. Farr*, 536 F.3d 1174, 1181 (10th Cir. 2008) (reversing conviction where prosecution proved tax liability different from that alleged in indictment; "Had the government simply charged [defendant] generically under section 7201 with willful evasion of a tax, we might have had a different situation. But it did not. Instead, the government opted to include in its indictment particulars about the nature of the tax at issue…."); *United States v. Chambers*, 408 F.3d 237, 247 (5th Cir. 2005) (reversing felon-in-possession conviction where evidence concerning ammunition at trial did not correspond to specific ammunition alleged to meet "interstate commerce" element in indictment) (collecting cases); *United States v. Randall*, 171 F. 3d 195, 209 (4th Cir. 1999) (reversing section 924(c) conviction where government proved predicate offense different from the one charged in indictment); *United States v. Leichnam*, 948 F.2d 370, 379 (7th Cir. 1991) (reversing conviction where trial evidence included three guns but indictment specified one particular gun; "Obviously, the government could easily have drawn up [defendant's] indictment to charge him simply with having used or carried 'a firearm.' But it did not do so, and the description it gave of the gun in the indictment, 'to wit a Mossberg rifle, Model 250CA with no serial number,' was not merely surplusage. That is true as a matter of law. By the way the government chose to frame [the] indictment, it made the Mossberg an essential part of the charge and limited the bases for possible conviction to the Mossberg."); *United States v. Keller*, 916 F.2d 628 (11th Cir. 1990) (reversing where evidence of possible co-conspirators was broader than specific co-conspirator named in indictment); *United States v. Zingaro*, 858 F.2d 94, 103 (2d Cir. 1988) (reversing RICO conspiracy conviction where evidence included loan not referenced indictment); *United State v. Cusmano*, 659 F.2d 714 (6th Cir. 1981) (reversing Hobbs Act conviction where evidence included threats of violence but indictment only

reversal where the indictment alleged only *sand* shipments. Here, proof concerning an *abandoned prototype* microchip likewise requires reversal where the indictment was limited to "*the*" microchip released and sold in commerce.

The prosecution's complaint that focusing on the "indefinite article 'the' [sic] in Count One" is "hyper-technical," Opp. at 11, is both grammatically incorrect ("the" is by definition the *definite* article) and legally irrelevant. Like it or not, word choices carry meaning and consequences, particularly where constitutional rights are at stake. The Second Circuit's decision in *United States v. Roshko*, 969 F.2d 1 (2d Cir. 1992), cited with approval by the First Circuit in *Mubayyid*, is instructive. Indeed, as the First Circuit noted, *Roshko* turned on the indictment's use of the *indefinite* article—"a"—to specify a singular person as distinguished from, potentially, more than one person.

> [*Roshko*] involved a conspiracy to defraud the United States whose object was expressly defined as "seeking changes in the immigration status of an alien based on a sham marriage to a United States citizen that was falsely represented to be genuine." *Roshko*, 969 F.2d at 2. At trial, the government introduced evidence that the defendant had conspired in the marriage of her future husband, an immigrant from Israel, to a United States citizen, in order to secure his green card. *Id.* at 3. It further offered evidence of that couple's subsequent divorce and of the defendant's marriage to her now-permanent-resident-alien husband (which ultimately resulted in her successful application for a green card). *Id*. When the defendant raised a statute of limitations challenge to the evidence of her husband's sham marriage, the government argued that the conspiracy broadly embraced both marriages, and that the prosecution was therefore timely. *Id*. at 4. The Second Circuit, emphasizing that the indictment specifically charged a purpose to change the status of "an alien" through marriage to "*a* United States citizen," found that the indictment was not so broad as the government claimed. *Id*. at 5-6 (emphasis added). It held that the unlimited introduction of evidence

---

charged threats of economic loss); *United States v. Crocker*, 568 F.2d 1049, 1060 (3d Cir. 1977) (reversing false statement conviction where trial evidence supported theory of falsity different from that charged in indictment).

related to the second marriage, combined with the government's
arguments that such conduct was part and parcel of the conspiracy,
was impermissible because it "could easily have created a basis for
conviction which the grand jury did not intend to create." *Id*. at 6.

*Mubayyid*, 658 F.3d at 51. "*Roshko* thus stands for the unobjectionable proposition that the

government's broadening of an indictment's charges through proof at trial constructively amends

an indictment." *Id*. Similarly, here, the prosecution broadened the indictment's charge alleging

possession of "*the* design layout and GDS file for *the* HMC1022A microchip" through proof at

trial concerning possession of design layout and GDS files for a different, abandoned prototype

design. That expansion plainly amounted to a constructive amendment that violated Mr. Yu's

constitutional rights.

Unlike a constructive amendment, which "occurs when the charging terms of the

indictment are altered, either literally in effect," a "variance occurs when the charging terms remain

unchanged but when the facts at trial are different from those alleged in the indictment." *United

States v. Fisher*, 3 F.3d 456, 462 (1st Cir. 1993). The key distinction is that, with a "mere variance,"

the "proof contrary to that which is alleged in the indictment . . . is not material to any essential

element of the crime." *United States v. Rosen*, 444 F. Supp. 2d 664, 667-68 (E.D. Va. 2006) (citing

*United States v. Floresca*, 38 F.3d 706, 709-10 (4th Cir. 2006) (en banc)).

The examples of variances described in cases cited by the prosecution, Opp. at 12, confirm

this distinction. The omission of one digit of a firearm serial number, *see United States v. Morrow*,

925 F.2d 779 (4th Cir. 1991), or error in identifying the "brand" of firearm, *see United States v.

McIntosh*, 23 F.3d 1454 (8th Cir. 1984), are not material to any statutory element—a firearm is

still a firearm. In contrast, it is impossible to characterize the divergence of proof here—trial

evidence limited to an abandoned prototype design on one hand and a charge identifying the design

of the actual released microchip as the stolen trade secret at issue on the other hand—as a mere

"variance." The specification of the alleged "trade secret" at issue in each count of the indictment is more than just "material"; it actually *defines* the most "essential element" of the crime charged.

Finally, even if the Court could somehow characterize the divergence between proof and charge in this case as a "mere variance," it clearly affected Mr. Yu's substantial rights and, therefore, requires reversal. *See United States v. Cruz-Arroyo*, 461 F.3d 69, 77 (1st Cir. 2006) ("[A] variance requires that a conviction be set aside only when it is prejudicial, that is, when it affects the defendant's substantial rights."). The prosecution contends there was no prejudice here because Mr. Yu "has long known that Count One concerned a prototype design" based on discovery disclosures. Opp. at 13. That argument misses the mark, however, because the Court must focus not on what the defense may have learned from receipt of extrinsic information but whether "the *indictment* provides the defendant with sufficient detail to allow him to prepare a defense, avoid unfair surprise at trial, and plead double jeopardy when appropriate." *Cruz-Arroyo*, 461 F.3d at 77 (emphasis added).

Here, the indictment says nothing whatsoever about any HMC1022A "prototype"; it mentioned only "*the* design layout and GDS file for *the* HMC1022A microchip." And even with the benefit of discovery, the defense did not appreciate that there were significant differences between the HMC1022A "prototype" described in discovery and the final chip until mid-trial, based on testimony. And even then, the defense was not aware until closings that the prosecution would misleadingly focus on the release date of *the* HMC1022A chip in its arguments to the jury. As a result, the defense did not do a "deep dive" investigation into the development and any sales history of the prototype before trial. After all, the prototype was not charged. And now, ironically, the prosecution argues that it is too late to introduce newly discovered evidence about the prototype, including evidence that even the prototype was publicly available for sale (and thus, its

features "readily ascertainable") before Mr. Yu went to market with his related products.

**B.      The evidence failed to establish the layout and GDS file for the HMC1022A was still a "trade secret" on the date of the alleged offense in June 2019.**

The prosecution does not dispute that the only distinguishing feature of the HMC1022A, charged in Count One, is that it was publicly released in February 2019, after Mr. Yu left ADI. Nor can the prosecution deny that it argued in closing Mr. Yu "stole" chip designs while at ADI before corresponding products "were public in any form," even though he was charged with possession in June 2019, not theft in 2017 (or earlier).  Instead, the prosecution speculates that "the jury could easily have concluded" that the prototype design contained secrets that did not become "readily ascertainable" even upon release of the final, public version. Opp. at 14-15. But there is no basis in the evidence for this speculation:  even if the prototype design never became "readily ascertainable," in order to qualify as a trade secret, it must have independent economic value. And there was no basis for the jury to find that an abandoned prototype had value at any time, *see* section C below, much less *after* public release of the final product rendered all of *the final, better product's* key features readily ascertainable.

**C.      Evidence failed to prove the design layout and GDS file for an abandoned HMC1022A prototype design constituted or contained any "trade secret."**

The prosecution can point to no specific evidence or testimony that the prototype HMC1022A design had independent economic value. Instead, the prosecution argues that the defense failed to prove that it was a "textbook" design. Opp. at 16.[3] But of course, the defense has no burden to prove anything; it proffered the published "textbook" web page simply as illustrative

---

[3] The prosecution also incorrectly asserts that Exhibit 514, the datasheet for the Avago AMMC-5024, was not admitted into evidence.  In fact, it was—and we understand it was included without objection on the JERS disc that went to the jury. The transcript reflects that it was shown to the jury and the subject of questions. It was the *next* proposed exhibit, a datasheet from Microwave Technologies, that the Court did not admit. *See* 5/12 Tr. at 77-80.

authority in support of the defense position that there was no reasonable basis for the jury to infer that the prototype design contained any "secrets" not readily ascertainable from the legacy HMC1022.

Putting aside generalities, the prosecution has not identified any specific "secret" valuable feature of the abandoned HMC1022A prototype during trial and still has not done so now. *Cf. Analog Devices, Inc. v. Michalski*, 579 S.E. 2d 449 (N.C. Ct. App. 2003) (denying preliminary injunction in civil case because "Analog has failed to show what, if anything, in those schematics is specifically deserving of protection. Instead, Analog has made general claims . . . . Analog invites this Court to acknowledge the existence of trade secrets in the submitted information without bearing the burden of identifying those trade secrets.").

**D.    Evidence failed to establish Mr. Yu knew the design layout and GDS file for an abandoned HMC1022A prototype design was a trade secret.**

The prosecution contends there was "overwhelming evidence from which the jury could have inferred that the defendant knew the 1022A prototype contained trade secrets," Opp. at 19, and goes on to cite evidence that Mr. Yu understood ADI treated its internal information as "confidential" generally and that Mr. Yu tried to conceal the fact that he took design materials including the 1022A prototype, specifically. Opp. at 20-21. But this evidence only supports an inference that Mr. Yu recognized the materials were *proprietary*, which is not the same thing as knowledge that they constituted actual trade secrets, as the cases cited by the prosecution acknowledge. *See United States v. Jin*, 833 F Supp. 2d 977, 1013 (N.D. Ill. 2012) (rejecting prosecution argument that "it need only prove that a defendant knew that the information taken was proprietary, not a trade secret"). Indeed, ADI's Information Classification Policy expressly treated integrated circuit layout, CAD, and mask data as merely "Confidential," a standard distinct from and lesser than a "Trade Secret." *See* Ex. 276 at 2. The conclusory assertion from *United*

*States v. Chung*, 633 F. Supp. 2d 1143 (C.D. Cal. 2000), that the "knowledge" element is not a "difficult burden of proof," *id*. at 1145, says nothing about the evidence in *this* case. And the *Chung* court's statement was predicated on the assumption, inapplicable here, that the defendant is a "spy" who would not deign to "deal in worthless or readily ascertainable information." *Id.* at 1146.

      **E.**    **Evidence failed to establish Mr. Yu intended to injure ADI.**

      The prosecution argues that Mr. Yu's possession of the 1022A prototype and development of equivalent products necessarily means he intended to cause injury to ADI. Opp. at 21. But that conflates the personal "benefit" and intended "injury" elements of the offense. To further support its argument, the prosecution seeks an adverse inference from the supposed "fact" that Mr. Yu "stole ADI's pricing data so that he could undercut ADI's prices; and he stole an ADI customer list so that he could market to ADI's customers." Opp. at 21. But of course, Mr. Yu was acquitted of those charges, and there was no evidence that he undercut ADI prices or used any customer list to market his wares.

**II.**    **The Court Should Order a New Trial.**

      The "interests-of-justice" standard in Rule 33 encompasses more than what would constitute reversible error on appeal, *see United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994), and courts have granted new trials "in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial," *United States v. Cabrera,* 734 F. Supp. 2d 66, 87-88 (D.D.C. 2010) (internal quotation marks omitted), *aff'd in part sub nom. United States v. Vega,* 826 F.3d 514 (D.C. Cir. 2016) (*per curiam*). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson,* 246 F.3d 129, 134 (2d Cir. 2001) (citing *United States v. Sanchez,* 969 F.2d 1409, 1414 (2d Cir. 1992)). While this Court, in its discretion, *may* apply "plain error" review to issues unpreserved at trial (*e.g.,* objections to the prosecution's closing argument), it is not

*required* to do so. *See United States v. Brandao*, 448 F. Supp. 2d 311, 318 (D. Mass. 2006) ("[I]t is not unprecedented for a trial court to apply the plain error standard to an objection raised for the first time in a post-trial motion, because at that stage, the court 'performs something of an appellate role.") (quoted in *United States v. Canty*, 37 F.4th 775, 790 (1st Cir. 2022)). In any event, all of the issues Mr. Yu raises meet "plain error" criteria: the errors were clear, they affected the Mr. Yu's substantial rights, and also seriously impaired the fairness, integrity, or public reputation of the proceedings.

### A.   Deficiencies in jury instructions warrant a new trial.

The prosecution repeats the general mantra that it need not "prove particular dates" but ignores that the authorities cited by Mr. Yu limiting this general proposition in situations where a specific date is "material." D.E. 286 at 3. Here, the date was critical because, as of the charged date in June 2019, all of the ADI products at issue were publicly available, their features were readily ascertainable, and thus, they did not qualify as trade secrets.

With regard to the injury instruction, the prosecution argues only that the jury could infer intent to injure from mere competition. Opp. at 23. Be that as it may, Mr. Yu objected to the Court answering the jury's question about "injury" with suggested findings that might qualify, such as "being first to market." The Court should not have opined on whether such a "fact" a might constitute "injury," and the harm was acute because of the prosecution's misleading (now, in fact known to be incorrect) arguments about who was "first to market."

### B.   The prosecution's closing argument warrants a new trial.

The prosecution contends that its closing argument was proper because Mr. Yu's "knowledge that the trade secret was stolen was necessarily and convincingly demonstrated by his having been the person who stole it." Opp. at 24. But the problem with the closing was not merely mentioning the alleged "fact" of theft. Rather, it was the emphasis on the *date* of "theft" (in or

before 2017) compared with the public release date of ADI's products (in particular, the HMC1022A in February 2019). That was misleading because Mr. Yu was charged not with theft but with unlawful *possession* of a trade secret in June 2019, after all of the ADI chips were publicly released and their features thereby "readily ascertainable."

C.   **Evidence of ADI's release of the 1022A prototype supports Mr. Yu's existing arguments for a new trial or, at a minimum, warrants further discovery and an evidentiary hearing.**

In his supplemental filing, Mr. Yu proffered evidence that ADI offered the prototype version of the HMC1022A for sale on its public website no later than August 19, 2018, and that the data sheet for that version had been created in December 2015. D.E. 303. Thus, contrary to the prosecution's closing argument, it was ADI, not Tricon, that indisputably came "first to market" with its product, which was a prominent factor the Court suggested the jury should consider in response to its question during deliberations about "injury."

In response, the prosecution proffered an affidavit which does not dispute or even mention ADI's on-line advertisement and sales of a "pre-release" version of the chip corresponding to the 2015 data sheet. D.E. 305-1. Instead, the affidavit revealed additional information that ADI had provided "free samples of the HMC1022A" (the affiant did not specify whether he was referring to the "final" chip or a prototype) to unidentified customers in 2018 and 2019. And while the affiant noted that it was "ADI's practice" to provide samples pursuant to a non-disclosure agreement, it notably did not say that such an agreement was secured for these samples.

The prosecution contends that this evidence does not qualify as "newly discovered" because it was available to Mr. Yu before trial. However, Mr. Yu is not offering this evidence as a stand-alone basis for a new trial. Rather, the evidence supports his existing arguments—it further demonstrates the prejudice flowing from the Court's "first to market" instruction and the prosecution's misleading closing argument focused on release of the "final" HMC1022A chip. It

13

also further demonstrates the prejudice flowing from the divergence between the trial proof and the indictment (relevant if the Court determines that to be a "variance" rather than a "constructive amendment" that requires automatic reversal).

Finally, the complete and accurate development, release, and sales history of the HMC1022A is also centrally relevant to alleged "loss," a subject the parties and the Court have deferred for sentencing. Even if the Court believes that information currently available is not adequate to require a new trial or evidentiary hearing at this time, the Court should reserve its Rule 33 decision while additional information is obtained and developed in connection with the sentencing hearing.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Mr. Yu's original motion or supplemental memorandum, the Court should order a judgment of acquittal, or alternatively, it should order a new trial.

Respectfully submitted,

**HAOYANG YU**

by his attorneys,

_____/s/ William W. Fick_____
William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
*wfick@fickmarx.com*
*dmarx@fickmarx.com*

Dated: September 6, 2022

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 6, 2022.

                                       */s/ William W. Fick*