IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HAOYANG YU | No. 19-cr-10195-WGY |

**DEFENDANT HAOYANG YU'S MOTION TO RECONSDIER
DENIAL OF MOTION FOR A NEW TRIAL IN LIGHT OF FIRST CIRCUIT DECISION
IN *UNITED STATES V. MOFFETT*, NO. 22-1075 (1st Cir. Nov. 18, 2022)**

Defendant, Haoyang Yu, respectfully requests that this Court reconsider its denial [D.E. 307] of his Motion for a New Trial [D.E. 286] in light of the First Circuit's decision last Friday in *United States v. Moffett*, No. 22-1075 (1st Cir. Nov. 18, 2022) (attached as Exhibit A hereto).

*Moffett* confirms that this Court erred when it responded to a jury question regarding the definition of "injury" by highlighting, at the prosecution's request, the prosecution's theory and purported evidence that being "first to market" could satisfy that element of the charged trade secret offenses. *See* D.E. 286 at 19. Accordingly, the Court should reconsider its decision denying Mr. Yu's Motion for New Trial, necessarily rejecting Mr. Yu's argument, which he expressly included in the motion and had preserved by contemporaneously objecting to the Court's response to the jury question during deliberations.

**I.    Legal Teachings of *Moffett***

In *Moffett*, the First Circuit held that this Court abused its discretion by submitting a verdict form that associated particular trial exhibits with particular counts. *See* slip op. at 26.[1] Explaining

---

[1] This Court had also initially proposed a verdict form in this case that similarly included specific exhibit references, but removed them after undersigned counsel objected: "[W]e very strenuously object to pointing to particular exhibits. I mean, I think that highlights evidence, emphasizes evidence . . . . we take strong exception to identifying, highlighting, endorsing the

the rationale for its decision, the First Circuit noted that the "novelty of th[e] fact pattern does not insulate" the district court's exercise of discretion "from Sixth Amendment review." *Id*. at 15-16. It further emphasized, "there are 'inherent limitations on the 'privilege of the judge to comment on the facts." *Id*. at 13 (quoting *Quercia v. United States*, 289 U.S. 466, 470 (1933)).

> These "inherent limitations" reflect the practical reality that "under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight" and that a trial judge's "lightest word or intimation is received with deference[.]" *Starr v. United States*, 153 U.S. 614, 626 (1894). The Court for that reason has long admonished trial judges that, in addressing the evidence, "great care should be exercised that such expression should be so given as not to mislead, and especially that it should not be one-sided." *Id*. The caution aims to ensure that trial judges do not in addressing the evidence "interfere with the jurors' independent judgment in a manner contrary to the interests of the accused." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 573 (1977). Consistent with this understanding of the Sixth Amendment, our precedents recognize that the jury must be free not only from "direct control in its verdict" by the district court but also "from judicial pressure" "[i]n the exercise of its functions." *United States v. Spock*, 416 F.2d 165, 181 (1st Cir. 1969) ("Put simply, the right to be tried by a jury of one's peers finally exacted from the king would be meaningless if the king's judges could call the turn."). We have thus explained that a district court in commenting on the evidence to the jury in a criminal case may not do so in a manner that "usurp[s] the jury's factfinding role," *United States v. Rivera-Santiago*, 107 F.3d 960, 965 (1st Cir. 1997) (per curiam), or "relieve[s] the prosecution of [its] burden in an unfair way," *United States v. Argentine*, 814 F.2d 783, 787–89 (1st Cir. 1987).
>
> Accordingly, in [*United States v.*] *Rivera-Santiago*, [107 F.3d 960 (1st Cir. 1997)], we held that a district court's answer to a jury's question that "selected only a part of [a witness's] testimony given on direct examination to be read" back to the jury violated the defendants' Sixth Amendment right to a trial by jury. [*Id.*] at 965-67. We explained that the violation resulted because the district court's answer to the jury's question "culled the evidence" in a manner that was contrary to the defendants' interests. *Id*. at 967. That was so, we explained, because the district court through the answer effectively directed the jury to consider only certain testimony that favored the government, even though "defendants [a]re entitled to have their theory of the case, as developed through their evidence, presented to the jury on an equal footing with the government's theory of the case." *Id*.

---

most important, particular exhibits."  The Court: "I've never done it. I thought it would be helpful but I can knock that out." 5/24/22 Tr. at 164-65. While this Court thus avoided repeating the identical error made in *Moffett*, its response to the jury's question nevertheless plainly ran afoul of the legal underpinnings of *Moffett*, as explained *infra*.

> We also have indicated that a district court may cross the constitutional line even without in effect directing the jury to consider only the government's evidence. We have indicated that the constitutional line also may be crossed whenever the district court, in addressing the jury regarding evidence, places "undue weight" on portions of the government's evidence and thereby tilts the trial in that party's favor. *United States v. Almonte*, 594 F.2d 261, 265 (1st Cir. 1979) (holding that the district court did not err in declining to answer a jury question seeking reutterance of trial testimony related to "the timing of [a particular day's] events," citing *United States v. Baxter*, 492 F.2d 150, 175 (9th Cir. 1973)); *Baxter*, 492 F.2d at 175 n.19 (explaining that the district court's denial of a jury's request for testimony from specific witnesses was proper because doing so would have "give[n] over-emphasis to that particular area of evidence").

Slip. op. at 13-15.

## II. This Court Committed *Moffett* Error in Answering the Jury's Question.

Here, during deliberations, the jury posed the following question:

> We would like clarification on specific legal meanings, please, trade secret, readily ascertainable, injure, as in injury to ADI cased by loss of trade secrets.

5/26/22 Tr. at 5-6.  Prior to answering the question, the Court engaged in the following colloquy with counsel concerning the words "injure" and "injury":

> THE COURT: [A]nd "injure," as "an injury to ADI caused by loss of trade secrets."
> MR. CASEY: Your Honor, with respect to the last one, do you want to make clear that it's not -- actual injury is not required, it's whether the defendant intended to cause injury.
> THE COURT: I will say that, but I should define it. And what is it?
> MS. BECK: Well I believe yesterday, your Honor, you said the intent to compete.
> MR. FICK: Your Honor, I don't think that's necessarily an injury, I think the statute actually just uses the word "injure." It's left to the jury, in their common understanding, to apply that to the facts of the case.
> THE COURT: Well when they ask, I have a duty to, um, answer it. And so I propose to answer it as Ms. Beck suggests.
> MR. CASEY: And, your Honor, a possible injury would be getting to market before ADI did --
> THE COURT: Well that's an injury to competition and I will include that as an example.

The Court proceeded to instruct the jury:

> Now the statute does not define injury and therefore applying that statute to the

3

> evidence in the case is a -- is part of the jury function. You may consider -- and again don't take anything from me, if you thought that there were trade secrets in the knowing possession of Mr. Yu, it is a separate and essential element that the government must prove, and your question goes to it, did Mr. Yu intend to injure ADI by taking -- well they don't say he took it, but by possessing what you would have found is in fact a trade secret. Injury could, I leave it to you, be an injury because who would get first to market, any sort of competitive injury because matters could be disclosed to other competitors, um, Mr. Yu could make use of the trade secret for his own monetary advantage to the detriment of ADI.
>
> I don't suggest that any of those things are supported by the evidence here or not supported by the evidence, that's left to you. But I'm clarifying what the word "injury" there is. The government must prove, beyond a reasonable doubt, among the other essential elements, is that those possession of trade secrets, in part by Mr. Yu, whenever else he may have had in mind, was intended to injure ADI.

5/26/22 Tr. at 7-8. Before the jury retired, Mr. Yu renewed his objection to the Court's answer. *See id.* at 9.

By emphasizing the government's mere *allegations* (whether or not proven) that Mr. Yu was "first to market" with certain products, and by endorsing even *potential* proof of such facts as evidence that *could* satisfy the intended "injury" element of the statute, this Court "invaded the jury's power over factfinding by over-emphasizing certain of the government's evidence in a manner that was contrary to [Mr. Yu's] interests." Slip op. at 17. Even though this Court did not "suggest that any of those things are supported by the evidence here or not supported by the evidence," it nevertheless tainted the deliberations "merely by referencing" those allegations "while not otherwise referencing any other evidence." *Id*. at 19. Put another way, this Court "impermissibly privileged a portion of the government's evidence over that of the defendant, at least by giving 'undue weight' to that evidence by singling it out in such a salient manner." *Id*. at 21.

The prejudice from this Court's error is indisputable. The only meaningful fact distinguishing the HMC1022A, underlying Count One, on which Mr. Yu was convicted, from the

4

chips underlying other counts, on which Mr. Yu was acquitted, was the prosecution's assertion that the HMC1022A was not released until February 15, 2019, suggesting Mr. Yu's products had hit the market before that single ADI product.

| | ADI Chip | Released to Sale | Designer | # Tapeouts | On K86? |
|---|---|---|---|---|---|
| | **SUMMARY OF ADI CHIPS** | | | | |
| 1 | HMC1022A | 2/15/2019 | Guogong Wang & Mir Faiz | 6 | Yes |
| 2 | HMC907A | 7/24/2017 | Guogong Wang | 6 | Yes |
| 3 | HMC797A | 4/14/2017 | Guogong Wang | 5 | Yes |
| 4 | HMC906A | 4/28/2017 | Song Lin | 7 | Yes |
| 5 | HMC462 | About 2003 | Paul Blount | Unknown | No |
| 6 | HMC465 | About 2003 | Paul Blount | Unknown | No |
| 7 | HMC8325 | 4/21/2017 | John Mahon | 3 | No |
| 8 | ADL7003 | 4/21/2017 | John Mahon | 4 | No |



There is a "reasonable probability" that the "undue weight" this Court placed on the "first to market" allegation "influenced the jury in reaching its verdict[ ] in this case," and therefore, "the verdict[ ] cannot stand." Slip op. at 32.

Moreover, the prejudice here is compounded because, in fact, ADI was marketing a "pre-release" version of the HMC1022A on its website no later than August 19, 2018, *before* Mr. Yu received his similar chips from the foundry. *See* D.E. 303. In other words, not only was it error for this Court to highlight the government's "first to market" evidence and argument in the first place, but the prosecution's allegations were also demonstrably inaccurate. In fact, ADI was "first to market" with the HMC1022A.

## Conclusion

For the foregoing reasons, as well as those set forth in earlier filings, this Court should vacate Mr. Yu's sole count of conviction and order a new trial.

Respectfully submitted,

**HAOYANG YU**

by his attorneys,

      */s/ William W. Fick*
William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
Amy Barsky (BBO #601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
*wfick@fickmarx.com*
*dmarx@fickmarx.com*
*abarsky@fickmarx.com*

Dated: November 22, 2022

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 22, 2022.

      */s/ William W. Fick*