IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HAOYANG YU | No. 19-cr-10195-WGY |

**RESPONSE TO PROSECUTION'S SUPPLEMENTAL MEMORANDUM REGARDING ALLEGED "LOSS"**

Defendant, Haoyang Yu, respectfully submits this short Response to the prosecution's supplemental memorandum regarding alleged "loss," D.E. 348 ("S.Mem."), to address certain authorities, arguments, and evidence that the prosecution raised for the first time in that submission.

**I.    Only Actual Loss Can Trigger a Guideline Enhancement.**

The prosecution erroneously argues this Court cannot follow *United States v. Banks*, 55 F. 4th 246 (3d Cir. 2022), because Guidelines commentary expanding "loss" to include "intended loss" is binding under First Circuit precedent and *Stinson v. United States*, 508 U.S. 36 (1992). S.Mem. at 1-7.

First, no First Circuit precedent rejects a challenge to the "intended loss" commentary. The prosecution's reliance on *United States v. Bennett*, 37 F.3d 687 (1st Cir. 1994), is misplaced. *Bennett* concerned then-application note 7(b), which no longer exists. That note provided:

> In fraudulent loan application cases and contract procurement cases, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss). *For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan*. However, where the intended loss is greater than the actual loss, the intended loss is to be used.

1

*Id.* at 695 (quoting then-note 7(b)) (emphasis added by the Court). The Court observed in passing that application notes are binding under *Stinson v. United States*, 508 U.S. 36 (1993), and went on to explain how the district court should have calculated actual loss. *See id.* The Court in *Bennett* did not suggest that "intended loss" should have been assessed in the mortgage fraud scenario before it, much less discuss whether or how "intended loss" applies to broader categories of cases not governed by then-note 7(b).

Second, *Bennett* predates *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), by 25 years. Although *Kisor* did not overrule *Stinson* or circuit decisions like *Bennett* that acknowledged *Stinson*, it clarified how to apply *Stinson*. As the Eleventh Circuit recently explained:

> To follow *Stinson's* instruction to treat the commentary like an agency's interpretation of its own rule, we must apply *Kisor's* clarification of *Auer* deference to *Stinson*. We have not ignored *Stinson* or treated it as having been overruled—rather, it directs us to *Seminole Rock* and *Auer*, as clarified by *Kisor*.

*United States v. Dupree*, 2023 U.S. App. LEXIS 1183, *14, 57 F.4th 1269, __ (11th Cir. Jan. 18, 2023). That is precisely what the Third Circuit did in *Banks* and what Mr. Yu urges this Court to do here.

Third, as Mr. Yu explained in his initial Memorandum, D.E. 344 at 3-4, *United States v. Lewis*, 963 F. 3d 16 (1st Cir. 2020), supports his position and expressly acknowledges that *Kisor* applies to the Sentencing Guidelines. *Lewis* rejected the defense argument before it only because prior circuit precedent expressly held that that inchoate offenses can be career offender predicates and because the career offender guideline is "genuinely ambiguous." *Id.* at 23-24.

Finally, the prosecution argument that "loss" is somehow ambiguous, S.Mem. at 5-7, fails to grapple with the straightforward and persuasive reasoning of *Banks*. And again, the cases the prosecution cites do not help it. In *United States v. Riccardi*, 989 F.3d 476 (6th Cir. 2021), the

Court explained, "we need not decide whether one clear meaning of the word loss emerges from the potential options after applying the traditional tools of construction to § 2B.1." *Id*. at 486 (quoting *Kisor*, 139 S. Ct. at 2415) (internal quotation marks omitted). But far from discerning a need to *accept* Commission commentary to address purported ambiguities in § 2B1.1, the Court *refused* to follow an application note recommending a $500 minimum "loss" for a stolen gift card. *See id.* The other case the prosecution cited, *United States v. Kirilyuk*, 29 F.4th 1128 (9th Cir. 2022), simply adopted the reasoning of *Riccardi* to reach the same result. *See id*. at 1138. The Ninth Circuit stated, "this case illustrates the egregious problem with the Application Note's expansion of the meaning of 'loss,'" *id.*, an observation that echoes the Third Circuit's reasoning in *Banks, see* 55 F.4th at 253 ("[B]ecause the loss-enhancement commentary improperly expands the Guideline, we will vacate Banks's judgment of sentence….").

**II.    The Prosecution Has Not Proven Actual or Intended Loss.**

In its Supplemental Memorandum, the prosecution all but abandons its allegations of actual loss, other than a footnote baldly asserting, "the evidence also supports an actual loss figure of $27,904." S.Mem. at 8. The prosecution ignores all the gaping holes in its argument, *see* D.E. 34 at 7-14, most notably, the absence of *any* evidence that sales of the Tricon TM5051/52 actually displaced any sales of ADI's HMC1022A.

Without evidence that sales of the TM5051/52 actually displaced HMC1022A sales, it is impossible to conclude that Mr. Yu somehow *knew* such displacement would occur, much less that he *intended* to "inflict" such harm on ADI as a "conscious object" of his activity, as required under *United States v. Manatau*, 647 F.3d 1048, 1050 (10th Cir. 2011).

The prosecution argues, "[t]hrough its verdict, the jury necessarily found beyond a reasonable doubt that the defendant intended to injure ADI." S.Mem. at 8. But as this Court explained to the jury, the definition of "injury" under 18 U.S.C. § 1832(a) differs from financial

3

"loss" under the Guidelines. *See* Tr.5/26/22:8 (Court: "Injury could, I leave it to you, be an injury because who would get first to market, any sort of competitive injury because matters could be disclosed to other competitors…"). Indeed, since there was no evidence before the jury about actual or intended sales losses, the jury necessarily must have found that the intended "injury" took some other non-financial form.

The balance of the prosecution's memorandum largely rehashes its earlier unpersuasive arguments that the Court should infer intention to cause financial loss to ADI from evidence that Mr. Yu was trying to establish a successful business. Much of this argument is based on acquitted conduct that has nothing to do with the HMC1022A "trade secret" at issue, specifically. When the prosecution persists in referring to Mr. Yu as the proprietor of a "criminal enterprise," S.Mem. at 9, it ignores that the jury acquitted Tricon of all charges and acquitted Mr. Yu of all but one.

Finally, the prosecution tries to perpetuate the canard that Mr. Yu's work "was mostly to rearrange peripheral features of the stolen trade secret design and add his own name." S.Mem. at 15. It is particularly ironic that the prosecution relies on Dr. Nordquist's testimony for this argument—and even has the temerity to call Mr. Yu "disingenuous"—because it was the prosecution that intentionally kept Dr. Nordquist in the dark about the undisputed, material fact that Mr. Yu used *a different PDK* for Tricon chips than ADI had used in its designs. Asked whether he was aware that Tricon chips and ADI chips were made with different PDKs, Dr. Nordquist responded, "I do not know." Tr.5/20/22:74.

What we do know from Dr. Nordquist's work is that the TM5051/52 had the *least* amount of "metal" overlap with the HMC1022A among all the comparisons he made between Tricon's chips and ADI's chips. Ex. 636. Multiple witnesses, not just Blount (quoted in Mr. Yu's initial memorandum, D.E. 344 at 6), testified that one can't simply submit an existing design with

4

superficial changes to be manufactured with a different process—that's the entire reason "translation" is necessary in the first place. *See also* Tr.5/10/22:27 (Wagner: "[W]e have over 30 different processes that we use for very different applications. Q. So are they interchangeable? A. Oh, no. Um, the processes are very different amongst each themselves. Some are similar, but they're not interchangeable at all. Q. Okay. And if one were to simply take an ADI design on the PP 15-51 or 61 and say, 'Hey, Win manufacture[ ] this with a 15-22 process,' the result also would not be very reliable, right, because you're manufacturing it with the wrong process, not the one for which it was designed? A. Correct. Q. Okay. So you couldn't just take an ADI product on the 51 or 62 process and manufacture it on the 22 and expect a good result, right? A. No, you cannot."); Tr.5/11/22:10 (Elliasevich: "Q. Now, if you were to take a GDS file based on a newer process, like the PP 15-51 [ ] and tried to tape it out using the older process, the 15-22, you would not expect it to perform properly, would you? A. Correct."); Tr.5/24/22:73-74 (Mahon: "Q. I think you said for different processes you need to have different designs, is that right? A. Yes, you -- the designs will be different because the model -- the transistor, the actual transistor is going to be different."). In short, all witnesses agreed that to produce Tricon's chips with a different foundry process, Mr. Yu had to undertake significant development work of his own.[1]

## Conclusion

For the foregoing reasons, as well as those set forth in Mr. Yu's initial memorandum, D.E. 344, the Court should find that only actual loss, not intended loss, can trigger a Guideline enhancement, and that the prosecution has proven neither.

---

[1] The prosecution is wrong to say that "the jury reje-cted this claim." S.Mem. at 15. In reaching its verdict, the jury found only that the K8600 prototype constituted a trade secret. It made no findings, express or implicit, about the resemblance of Tricon products to ADI products or the amount of engineering work that Mr. Yu performed.

Respectfully submitted,

**HAOYANG YU**

by his attorneys,

/s/ William W. Fick
William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
*wfick@fickmarx.com*
*dmarx@fickmarx.com*

Dated: February 13, 2023

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 13, 2023.

/s/ William W. Fick