IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HAOYANG YU | No. 19-cr-10195-WGY |

**DEFENDANT HAOYANG YU'S MOTION
FOR CONTINUED RELEASE PENDING APPEAL**

Pursuant to 18 U.S.C. § 3143(b), Defendant Haoyang Yu respectfully requests that the Court permit his continued release pending his appeal from the still-to-be-entered judgment on the single count of conviction in this case. Mr. Yu does not dispute that the Court imposed a fair *sentence*, assuming a valid conviction. But Mr. Yu intends to raise multiple issues of law and fact challenging the *conviction* on appeal—several of which the Court has expressly acknowledged to be substantial. Unless released, Mr. Yu would almost certainly complete his 6-month term of imprisonment before the Court of Appeals could decide his appeal.

The government stated to undersigned counsel that it has not yet decided whether it will oppose Mr. Yu's motion.

Notably, in the recent "Varsity Blues" case, two defendants were convicted at trial and sentenced to imprisonment for 1-year-and-1-day and 15 months, respectively, and the government withdrew its opposition to their motions for release pending appeal. *See United States v. Wilson & Abdelaziz*, No. 19-cr-10080-NMG (D. Mass.), D.E. 2622. Similarly, in the case of *United States v. Xiaoquing Zheng*, No. 19-cr-00156-MAD (N.D.N.Y.), D.E. 323, the defendant was permitted to remain on release pending appeal[1] after being sentenced to 24 months upon conviction for

---

[1] It is not clear from the docket whether the government objected.

1

conspiracy to commit economic espionage in violation of 18 U.S.C. § 1832, the same statute under which Mr. Yu was convicted. Mr. Yu should not be treated more harshly, especially where he faces a shorter prison sentence and has preserved multiple issues that, if he prevails, would result in a judgment of acquittal or a new trial.

## Argument

While relatively uncommon in practice, perhaps in part because few defendants make the request, release pending appeal is actually *mandatory* if certain conditions are met. Under 18 U.S.C. § 3143, the Court *"shall"* grant release pending appeal if it finds:

> (A) by clear and convincing evidence that [Mr. Yu] is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
> (i) reversal, [or]
> (ii) an order for a new trial,
> . . . .

18 U.S.C. § 3143(b)(1). The First Circuit has interpreted section (b)(1)(B) to contain two prongs: "(1) that the appeal raises a substantial question of law or fact and (2) that *if* the substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *United States v. Bayko*, 774 F.2d 516, 522 (1st Cir. 1985) (emphasis added). This standard "does not require a showing that the defendant would 'probably' win." *United States v. Schwartz*, 86 F. Supp. 3d 25, 29-30 (D. Mass. 2015). A substantial question is simply "a close question or one that very well could be decided the other way." *Bayko,* 774 F.2d at 523 (internal quotation marks omitted).

Mr. Yu readily satisfies the statutory criteria.

2

**I.     Mr. Yu is not a flight risk or danger to the community.**

Mr. Yu has complied with all release conditions during the years his case was pending, has no criminal history, and poses no conceivable danger to the community. Indeed, by allowing Mr. Yu to self-surrender, the Court has already confirmed that Mr. Yu satisfies the requirements of section 3143(b)(1)(A). *See United States v. Zimny*, 857 F.3d 97, 99 (1st Cir. 2017) (explaining that since the defendant "remained out on bail during trial," and the district court "allowed him to self-report to prison following his conviction and the imposition of sentence," the defendant had "met his § 3143(b)(1)(A) burden").

**II.    Mr. Yu is not appealing for the purpose of delay.**

On appeal, Mr. Yu will pursue multiple, non-frivolous arguments that he should never have been convicted in the first place, because the evidence at trial was insufficient to prove his guilt beyond a reasonable doubt.  In addition, several legal errors require a new trial. He is not appealing to delay his 6-month sentence but rather to vacate an erroneous conviction and, therefore, avoid unwarranted incarceration altogether.

But if the Court denies this motion, Mr. Yu's constitutional and statutory rights to challenge his conviction on direct appeal will be, in effect, illusory. That is because Mr. Yu is nearly certain to serve all of his 6-month sentence before the First Circuit decides his appeal. The median processing time of all First Circuit appeals is 12.6 months. *See* First Circuit 2020 Annual Report at 20.[2] In complex cases with lengthy trial records, the duration is often *much* longer. *See, e.g.*, *United States v. O'Brien*, No. 14-2314 (1st Cir.) (prosecution arising from so-called "patronage" hiring in state Probation Department) (over 28 months from docketing to mandate); *United States v. Burhoe*, No. 15-1542 (1st Cir.) (prosecution arising from union activity) (over 40 months from

---

[2] *Available at*
https://www.ca1.uscourts.gov/sites/ca1/files/2020%20Annual%20Report%20Final.pdf

docketing to mandate). This reality militates strongly in favor of release pending appeal in this case, which involved a 4-week trial that raised numerous, complex issues properly preserved for appellate review.

**III.     Mr. Yu's appeal will raise substantial issues of law that would require acquittal or a new trial if decided in his favor.**

While counsel are still reviewing the voluminous record to prepare Mr. Yu's appeal, he will likely raise some combination of the following substantial issues (without limitation).

### A.     The Court's response to the jury's question and *United States v. Moffett*

This Court acknowledged that Mr. Yu's Motion to Reconsider Denial of Motion for a New Trial in Light of First Circuit Decision in *United States v. Moffett* [D.E. 319], arising from the Court's answer to the jury's sole question during deliberations, was "not frivolous." 11/29/22 Tr. at 5-6. Mr. Yu will seek *de novo* review of the Court's denial of his motions.

In his Motion for Judgment of Acquittal or, Alternatively, for a New Trial [D.E. 286], Mr. Yu argued, *inter alia*, that the Court erroneously instructed the jury about the meaning of "injury," both in its initial instructions and by answering a jury question stating, "Injury could, I leave it to you, be an injury because who would get first to market…." D.E. 286 at 19.

Mr. Yu subsequently filed a Motion to Reconsider [D.E. 319] the Court's denial of a new trial in light of the then-just-issued First Circuit decision in *United States v. Moffett*, 53 F. 4th 679 (1st Cir. 2022), which reversed a judgment in a case where this Court had utilized a verdict form that associated particular trial exhibits with particular counts. Mr. Yu argued that, by emphasizing the government's allegations that Mr. Yu was "first to market" with certain products, and further by endorsing potential proof of such a fact as evidence that could satisfy the intended "injury" element of the statute, the Court "invaded the jury's power over factfinding by over-emphasizing certain of the government's evidence in a manner that was contrary to [Mr. Yu's] interests." *Id.* at

4

686. Even though the Court did not "suggest that any of those things are supported by the evidence here or not supported by the evidence," it nevertheless tainted the deliberations "merely by referencing" those allegations "while not otherwise referencing any other evidence." *Id*. at 687. Put another way, the Court "impermissibly privileged a portion of the government's evidence over that of the defendant, at least by giving 'undue weight' to that evidence by singling it out in such a salient manner." *Id*. at 688.

While the Court ultimately denied Mr. Yu's Motion to Reconsider in light of *Moffett*, the Court stated:

> This motion for reconsideration is not frivolous in our case, in the *Yu* case, and it gave me pause, and I carefully reflected, with as much independent judgment as I can bring to bear, um, what I should do? Because my conduct was of the same character, trying to teach the jury the legal framework, as has been the case, albeit candidly, erroneously, in *Moffett*. And for the reasons that the government has properly pointed out, I -- I simply want to say how carefully I've reflected about it. It may be that the matter will be reviewed on appeal.

11/29/22 Tr. at 5-6. As these comments acknowledge, the Court's answer to the jury's question in Yu was "of the same character" as the conduct the First Circuit deemed an abuse of discretion in *Moffett*. Mr. Yu's renewed objection, and the Court's thoughtful ruling, pose precisely the kind of "close question" that warrants release pending appeal under the First Circuit's cases.

    **B.**    **Sufficiency of the Evidence**

Mr. Yu intends to raise on appeal, for *de novo* review, some or all his arguments that the trial evidence was insufficient sustain the single count of conviction. *See* D.E. 286 at 2-17. Of particular note:

    1.    The trial evidence failed to establish that Mr. Yu ever possessed "the design layout and GDS file for the HMC1022A microchip" as alleged in Count One. Rather, the evidence at trial was that Mr. Yu possessed the design layout and GDS file for an earlier

5

prototype design, which ADI abandoned when it "went in a different direction" to develop the HMC1022A chip that it eventually released. The indictment did not charge Mr. Yu with possessing "a" design layout and GDS file for "an" abandoned prototype design for what ADI later released as the HMC1022A microchip; it expressly charged him with possession of "the" design layout and GDS file for "the" HMC1022A microchip itself.

2. The trial evidence failed to establish that the layout and GDS file for the HMC1022A was still a "trade secret" on the date of alleged offense in June 2019. The only distinguishing fact about the HMC1022A that could potentially explain the jury's guilty verdict on Count One coupled with acquittals on all the similar trade secret charges in Counts Two through Eight is that, alone among the chips identified in counts of the indictment, the HMC1022A was not "released to sale" until February 15, 2019, which was after Mr. Yu's departure from ADI on July 31, 2017. While the prosecution misleadingly argued in its closing that Mr. Yu "stole" chip designs before corresponding products "were public in any form," 5/25/22 Tr. at 51, Mr. Yu was not charged with stealing the layout and GDS file for the HMC1022A during his tenure at ADI from July 2014 through July 2017— before ADI released the HMC1022A to the market. Rather, he was only charged with unlawfully possessing the layout and GDS file for the HMC1022A, allegedly still then a trade secret, in June 2019, nearly two years later. By then, however, ADI had released the HMC1022A for sale. In February 2019, four months before Mr. Yu allegedly committed the charged possession offense in June 2019, ADI marketed and sold the HMC1022A to the public. Therefore, by the time of the charged offense, the layout design and critical features of the released HMC1022A were "readily ascertainable" by examination of the

released product—not trade secrets—just like all the other products specified in Counts Two through Eight, on which the jury acquitted Mr. Yu.

### C. Misleading prosecution closing argument

Relatedly, Mr. Yu intends to seek *de novo* review of his claim that, as detailed above, the prosecution misled the jury by arguing in its closing that it should find Mr. Yu guilty because he "stole" chip designs when he left ADI in July 2017 and before the corresponding products were publicly available. *See* 5/25/22 Tr. at 51. That improper argument likely caused the jury to focus erroneously on the timing of supposed theft in or before July 2017, even though Mr. Yu was only charged with unlawfully possessing the design layout and GDS file or the HMC1022A in June 2019, four months after ADI had released the product for sale, at a time when there could be no "trade secret" because the layout and features of the product were readily ascertainable. Thus, the prosecution's misstatements "prejudiced the outcome of the case, warranting a new trial." *United States v. Azubike*, 504 F.3d 30, 39 (1st Cir. 2007).

### D. Selective Prosecution and Enforcement

Mr. Yu intends to seek *de novo* review of his Motion to Dismiss for Unconstitutional Selective Prosecution and Enforcement [D.E. 55, 56, 314, 315, 316, 359, and 364]. As the Court acknowledged, Mr. Yu "mustered … eyebrow-raising statistics" of racial disparity. D.E. 89 at 3. Those statistics, drawn from federal and state courts, demonstrate the alarmingly disproportionate rates of criminal prosecution for alleged trade secret offenses against defendants of Chinese ethnicity, including U.S. citizens of Chinese descent, like Mr. Yu. *See* D.E. 56-1 (Appendix A of Comparable Cases of Alleged Trade Secret Theft in Federal and State Courts in Massachusetts). Subsequent published research has confirmed these ongoing disparities. *See, e.g.*, *Racial Disparities in Economic Espionage Act Prosecution: A Window into the New Red Scare* (ed.

Andrew Chongseh Kim) (Sept. 21, 2021).[3] Apart from the inferences about intent that can properly be drawn from indirect evidence such as statistics, Mr. Yu also marshalled powerful direct evidence of discriminatory purpose flowing directly from the mouths of then-President Trump and high-level federal law enforcement officials, including FBI Director Wray. *See* D.E. 56 at 10-14. And documents produced by the government provided powerful evidence of discriminatory intent animating the actions of law enforcement officers who initiated the investigation of Mr. Yu and referred it to the U.S. Attorney. *See* D.E. 359.

The Court described the record as "troubling," 5/11/23 Tr. at 22, and found, "at each critical stage here, I do not deny that there was implicit – not explicit discrimination against Mr. Yu, but implicit bias based upon his ethnic heritage. There was." *Id*. at 28. But because the Court also concluded that "the steps that are crucial here, deciding to commit law enforcement resources to investigation, and further to later to involve the Offices of the United States Attorney, because those would have happened … in any event … the motion is denied." *Id*.

Respectfully, the Court's conclusion, and its denial not only of dismissal but also denial of further discovery, were erroneous, because Mr. Yu need only prove enforcement and prosecution occurred "at least in part 'because of,' and not merely 'in spite of'" his ethnicity and/or national origin. *Wayte v. United States*, 470 U.S. 598, 610 (1985) (quoting *Personnel Admin. of Mass. v. Feeney*, 422 U.S. 256, 279 (1979)) (emphasis added).

### E.   Motion for *Franks* Hearing

Mr. Yu intends to seek *de novo* review of the Court's denial of his pretrial Motion for *Franks* Hearing [D.E. 60, 61, 62]. As explained in Mr. Yu's motion papers, this Court should have

---

[3] *Available at* https://www.committee100.org/wp-content/uploads/2021/09/WhitepaperFinal-9.21-UPDATE-compressed.pdf

8

held a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to enable inquiry about multiple false and misleading statements and material omissions underlying a dozen search warrants issued in this case, which allowed the government to obtain nearly all the key evidence it used at trial. The search warrant applications purported to establish probable cause to believe that Mr. Yu stole trade secrets about certain integrated circuit devices from ADI and unlawfully exported those devices from the United States. The probable cause presentation was based on two essential pillars: purported "similarities" between ADI's products and Mr. Yu's own products, and a Department of Commerce "classification" of one of Mr. Yu's products as subject to export control. But neither pillar stands when stripped of the false and misleading statements and omissions on which it rests., including:

- False statements concerning Mr. Yu's nationality;

- False and misleading statements concerning "suspicious" use of a UPS store mailbox;

- False and misleading statements and omissions concerning the Department of Commerce CCL export classification of Tricon's TM-5054;

- False and misleading statements and omissions concerning products with "virtually the same or identical performance metrics";

- False and misleading statements and omissions concerning Digital Guardian evidence and "legitimate access" to ADI information; and

- False and misleading statements and omissions concerning suspected exports to China.

The search warrants were invalid and nearly all the government's trial evidence should have been suppressed.

***

A favorable decision on any one of the substantial issues set forth above would result in a judgment of acquittal or a new trial.

9

**Conclusion**

For the foregoing reasons, the Court should permit Mr. Yu to remain on release pending his appeal in this case.

Respectfully submitted,

**HAOYANG YU**

by his attorneys,

/s/ William W. Fick
William W. Fick, Esq. (BBO # 650562)
Daniel N. Marx, Esq. (BBO # 674523)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
wfick@fickmarx.com
dmarx@fickmarx.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 14, 2023.

/s/ William W. Fick