IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES

v.

HAOYANG YU

No. 19-cr-10195-WGY

**DEFENDANT HAOYANG YU'S RESPONSE
TO ADI'S LETTER REGARDING RESTITUTION [D.E. 416]**

Defendants Haoyang Yu submits this Response to the letter from counsel for Analog Devices, Inc. ("ADI"), D.E. 416, concerning Mr. Yu's Response, D.E. 412, to the prosecution's Brief Regarding Restitution, D.E. 406.

In an attempt to justify its exorbitant request for restitution—more than $600,000 in attorneys' fees—and as a "response" to Mr. Yu's prior submission, ADI makes two erroneous claims: (1) ADI's outside counsel "needed to attend" the entire three-week trial to protect the company's trade secrets from possible disclosure, D.E. 416 at 1-2, and (2) courts have "repeatedly and consistently" found Quinn's hourly rates—including Attorney William Weinreb's rate, which topped out at $1,865 per hour—are "reasonable." Neither claim withstands scrutiny.

**I.    ADI's outside counsel did not need to watch the entire trial to protect ADI's alleged trade secrets.**

The assertion that ADI "needed" to pay its outside counsel more than $100,000 to observe the trial so that counsel might "object to the disclosure of any trade secret" is an unpersuasive, *post hoc* justification. D.E. 416 at 1. Nothing in 18 U.S.C. § 1835(b) required ADI's outside counsel to be present in the courtroom or even authorized him to participate. *See id.* at 2. Indeed, that statute is expressly directed to the court ("The court may not authorize or direct the disclosure . . ."), not the alleged owner of a trade secret. It says nothing about what counsel for a non-party might, or

1

must, do during a trial to "object to the disclosure of any trade secret." Here, as the Court knows, it never authorized or directed the prosecution or Mr. Yu to publicly disclose any trade secret, and accordingly, § 1835(b) was not implicated.

As a practical matter, in this case, ADI faced no risk that the parties would publicly disclose any trade secret at trial. Before and during trial, ADI worked closely with the prosecution in preparing and presenting its evidence, and the parties identified all the trial exhibits in advance. The Court carefully and appropriately addressed all issues of confidentiality, without ADI's direct participation or any objection from the prosecution on ADI's behalf. These efforts included the entry of a special protective order at the prosecution's request, *see* D.E. 36, and discussion at the final pretrial conference, *see* 4/21/22 Tr. at 6-7. Tellingly, although Weinreb has now belatedly filed a notice of appearance for ADI as an "interested party" in the pending restitution matter, D.E. 416, neither he nor any other attorney for ADI appeared before trial, and ADI has never made any submission to the Court asserting any "right to object" under § 1835(b).

Moreover, the suggestion that "the potential disclosure of ADI trade secrets was a near-constant possibility" during the trial that might require counsel to "intervene in real-time" is absurd. As the invoices reflect, ADI paid its counsel to sit in the public gallery for almost 60 hours over the course of 3 weeks. That included the days when the Court instructed the jury and when the parties presented opening and closing arguments. It was certainly not "necessary" for ADI's counsel to sit at the edge of his seat ready to object from the back benches to the Court's instructions or counsel's arguments. D.E. 412 at 2. Rather, the reality is that he attended the trial to observe, report back to ADI, and assist in the prosecution of Mr. Yu.

ADI's counsel also sat through testimony from numerous witnesses who presented no risk whatsoever concerning the potential disclosure of any sensitive information. For example, a half-

dozen agents testified about their investigation of Mr. Yu and Tricon (HSI Special Agent Benjamin Hickok, MSP Lt. Sean Barry, HSI Special Agent Matthew McCarthy, FBI Special Agent Steven Valentine, and FBI Forensic Specialist Christopher Beckstrom); three individuals from other companies testified about their interactions with Mr. Yu and Tricon (Ivan Eliasevich and Russell Wager from WIN Semiconductors as well as Fawad Maqbool from Amplitech); an official from BIS testified about export controls (Carlos Monroy); and another official from USCIS testified about Mr. Yu's naturalization (Mirella Tiberi). None of these witnesses worked at ADI, ever possessed ADI's alleged trade secrets, or could have disclosed such information at trial. The same was true for the witnesses who testified about human resources matters at ADI (Sharon Tackaberry) and the company's outsourced corporate training programs (Akash Mathur from SAI Global). They had nothing to say about ADI's supposed trade secrets.

Even with regard to the current or former ADI employees who actually testified at trial about chip designs (John Cowles, Robert Norton, Mikael Garcia, and Song Lin from ADI as well as Paul Blount and John Mahon from Custom MMIC, another rival MMIC company), ADI cannot point to a single instance in which its outside counsel "needed" to object, "in real-time" or otherwise, to any testimony or exhibit, or even sought to do so.

ADI's letter also ignores the jury's verdict, which confirmed that none of the chip designs at issue—even the HMC1022A underlying the single count of conviction (which had not yet been released when Mr. Yu possessed it)—were "trade secrets" by the time of trial in May 2022, because all of them had been available in the market for *years*, thus making their key features "readily ascertainable" to any competent electrical engineer with a sufficiently powerful microscope.

**II.   Quinn's excessive hourly rates – topping out at nearly $2,000 per hour – were not "reasonable" for the limited services provided.**

The contention that "courts across the country have repeatedly and consistently held that

3

rates charges by Quinn Emanuel attorneys such as Weinreb are reasonable" is misleading at best. D.E. 416 at 1 & n.3. For starters, ADI's submission cites no cases from this District that have held such fees are reasonable.

Looking elsewhere, the cited cases do not say $1,865 per hour is ever reasonable, much less for the purposes of restitution in a criminal case like this one. The first citation in the lengthy Footnote 3 to ADI's letter is *Rudi v. Wexner*, No. 2:20-cv-3068, 2022 U.S. Dist. LEXIS 98299 (S.D. Ohio May 16, 2022). *Rudi* was a securities class action, not a criminal prosecution. The parties agreed on attorneys' fees as part of a global settlement after extensive negotiations. Based on that agreement, the court awarded fees to class counsel, who had taken the financial risk to bring the complaint on contingency and actively litigated the case through complex discovery, not counsel for a third-party who was a passive bystander to the proceedings. The published decision, which ADI cites, discusses using a lodestar to cross-check a negotiated fee award but does not mention any specific hourly rates; it certainly does not endorse paying $1,685 per hour to observe a case that other attorneys try. Nor does it mention Quinn or Weinreb at all.[1]

Similarly, review of publicly available information about the handful federal cases that ADI's letter cites from the past 10 years reveals *no case* in which any court, anywhere in the country, awarded fees to Quinn or Weinreb at the levels sought as restitution from Mr. Yu. Like *Rudi*, the other cases involved civil matters in which court orders or final settlements involved awards for attorneys' fees, often negotiated between the parties. In *Blattman v. Siebel*, No. 15-cv-

---

[1] In a joint declaration filed in support of the motion to approve the final settlement in *Rudi*, plaintiffs noted that Quinn was 1 of 8 firms that represented the class and that Quinn billed 7,919 hours at an average rate of $1,338 per hour. *See* D.E. 25-2 at 26 (table). Moreover, the average rate across all the firms was $951 per hour, and the firm that performed the bulk of the legal work in *Rudi*, Cohen, Milstein, Sellers & Toll PLLC, billed at an average hourly rate of only $715 per hour, about 40 percent of rate of $1,685 per hour that ADI seeks to pass on to Mr. Yu for having had Weinreb watch his criminal trial. *See id.*

00530-CFC (D. Del. June 1, 2021), Quinn apparently sought and the court awarded fees at a "blended rate" of $871.50 per hour. *See* D.E. 425 at 5, 11. In *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238-MMC (N.D. Cal. Dec. 17, 2020), the court awarded fees in connection with a civil discovery dispute based on Quinn's hourly rates "from approximately $590 per hour to approximately $675 per hour for associates" and "from approximately $880 per hour to approximately $915 per hour for more senior attorneys." D.E. 376 at 7. And in *Liqwd, Inc. v. L'Oreal USA, Inc.*, No. 14-cv-14-JFB (D. Del. Dec. 16, 2019), the court awarded attorneys' fees to plaintiffs who prevailed in a civil trade secrets case, citing Quinn's fees for its "core attorneys" which ranged at the high end from $705 per hour to $1,040 per hour. *See* D.E. 1162 at 25-26. In other words, in all the cited cases, where Quinn did substantially more work for actual parties, courts awarded fees at significantly lower hourly rates.

Finally, the claim (by Weinreb) that "Mr. Weinreb is one of a small number of attorneys in private practice with extensive experience in criminal theft of trade secrets cases" may make for good marketing, but it is not supported. D.E. 406 at 3. ADI's submission identifies no case, in this District or elsewhere, in which Weinreb has represented a defendant facing § 1832 charges, like the ones against Mr. Yu in this case, or an alleged victim in such a criminal prosecution. It cites only a single case in which Weinreb served as "lead prosecutor," *United States v. Doxer*, No. 11-cr-10268-DJC (D. Mass. filed Oct. 5, 2010), a prosecution brought over 13 years ago, before Congress enacted the Defense of Trade Secrets Act in 2016. D.E. 416 at 2 n.2. *Doxer* involved the theft of "customer lists," not technical information, from a software company, *see* No. 11-cr-10268, D.E. 1-1 (complaint), and no trial took place, because the defendant pleaded guilty. *See id.*, D.E. 19 (plea agreement); *see also* Electronic Clerk's Notes (Aug. 30, 2010) (noting guilty plea to information charging one count of foreign economic espionage in violation of 18 U.S.C. § 1831,

not theft of trade secrets in violation of § 1832). Put another way, ADI does not cite any case in which Weinreb played the supposedly critical role that he was handsomely paid to play here. Nor does ADI explain why an in-house attorney from ADI, or a more junior attorney from Quinn, could not have sat in the courtroom as "qualified counsel," and, if necessary, objected to the potential disclosure of any alleged trade secret. Indeed, a non-lawyer manager or engineer from ADI could have advised the prosecution if an objection were ever required to protect supposed trade secrets.

In the end, ADI is free to pay its outside lawyers astronomical rates for legal services, including their daily observation of a lengthy trial. What it cannot do, however, is shift that extraordinary cost to Mr. Yu under the MVRA as "actual losses" for a single count of conviction, effectively exacting a massive penalty for exercising his constitutional right to a trial by jury that found him not guilty on 18 of 19 charges (after the Court had already dismissed 2 other charges).

> Respectfully submitted,
>
> **HAOYANG YU**
>
> by his attorneys,
>
>     */s/ Daniel N. Marx*
> William W. Fick (BBO #650562)
> Daniel N. Marx (BBO #674523)
> Amy Barsky (BBO #601111)
> FICK & MARX LLP
> 24 Federal Street, 4th Floor
> Boston, MA 02110
> (857) 321-8360
> *wfick@fickmarx.com*
> *dmarx@fickmarx.com*
> *abarsky@fickmarx.com*

Dated: October 12, 2023

6

**CERTIFICATE OF SERVICE**

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 12, 2023.

              */s/ Daniel N. Marx*